In the Matter of the Judicial Settlement of the Account of PETER E. HENDERSON, as Executor of STEPHEN L. HENDERSON, Deceased; Respondent; JAMES STEPHEN EDGAR PATON, an Infant, by his Special Guardian, THOMAS H. TROY, Appellant.

1. SURROGATES — POWER TO CORRECT CLERICAL ERRORS — LIMITATION OF TIME. There is no statutory limitation of time upon the exercise by a surrogate of the power declared by subdivision 6 of section 2481 of the Code of Civil Procedure to correct, upon motion, a clerical error in a decree made by him, where the motion does not involve a review of his decision upon the merits, but simply calls for a correction of the record in accordance with the facts so as to conform to the intention of all parties.

2. CORRECTION OF CLERICAL ERROR OVERCHARGING EXECUTOR. The power of a surrogate to correct, on motion of an executor pending an application for his final accounting, a clerical or arithmetical error by which the executor was unintentionally overcharged in a decree settling his intermediate account, is not limited to two years from the making of the erroneous decree.

3. POWER OF SURROGATE DISTINGUISHED FROM THAT OF SUPREME COURT. The legislature, in providing that the power conferred upon surrogates by subdivision 6 of section 2481 of the Code, "must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises the same power," did not intend to assimilate, in all respects, the power of the Surrogate's Court over its records to that possessed by the Supreme Court.

4. TWO YEARS' LIMITATION UPON CORRECTION OF JUDGMENT. The provision of section 1290 of the Code of Civil Procedure relating to courts of record, that "a motion to set aside a final judgment for an error in fact, not arising upon the trial, shall not be heard * * * after the expiration of two years since the filing of the judgment-roll," does not deprive a surrogate of any power to entertain a motion to correct his records that he possessed before its enactment.

*Matter of Henderson*, 33 App. Div. 545, affirmed.

(Submitted November 22, 1898; decided December 16, 1898.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 11, 1898, reversing an order of the surrogate of Kings county denying a motion to open a decree made on an intermediate accounting by an executor.

MATTER OF HENDERSON. [Dec.,

The following question was certified by the Appellate Division for review :

· " Whether, notwithstanding the provisions of sections 1290 and 1291 of the Code of Civil Procedure, the surrogate of the county of Kings had power and jurisdiction to grant the petition presented to him on the 4th day of April, 1898, in said proceeding, and open, vacate or set aside the decree theretofore made by him in said proceeding on the 11th day of June, 1894, in the absence of any allegation or proof of fraud or collusion in said proceeding or in the making or entry of said decree ? "

The facts, so far as material, are stated in the opinion.

*James Troy* for appellant. The Surrogate's Court had no power to open and correct the decree herein. (Code Civ. Pro. ch. 1, tit. 1, art. 1, § 2; ch. 18, tit. 1, art. 1; tit. 2, art. 3, §§ 1282, 1283, 1290, 2481, subd. 6; Const. 1895, art. 3, § 3; Const. 1846, art. 6, § 8; *Matter of Hawley*, 100 N. Y. 206; *Matter of Tilden*, 98 N. Y. 434; *Matter of Flynn*, 136 N. Y. 287; *Matter of Foulks*, 18 Civ. Pro. Rep. 175; *C. E. Bank* v. *Blye*, 119 N. Y. 414; *Matter of Hesdra*, 4 Misc. Rep. 37; *Matter of Soule*, 72 Hun, 594.) Assuming that section 2481 of the Code gave to the surrogate all the power which the Supreme Court had to vacate its own judgment, inherent and statutory, it would still be subject to and governed by the prohibition and limitation of section 1290. (*Matter of Hawley*, 100 N. Y. 206; *Matter of Tilden*, 98 N. Y. 434.)

*Lawrence Kneeland* for respondent. The Surrogate's Court had inherent power to open, modify and vacate its decrees and orders for clerical errors before the enactment of the Code. (*Sipperly* v. *Baucus*, 24 N. Y. 46; *Vreedenburgh* v. *Calf*, 9. Paige, 128; *Skidmore* v. *Davies*, 10 Paige, 316; *Proctor* v. *Wanmaker*, 1 Barb. Ch. 302.) The provisions of the Code of Civil Procedure were not intended to deprive the surrogate of powers which he possessed and exercised prior to its enactment. (*Estate of Delaplaine*, 12 Civ. Pro. Rep. 35–46; *Singer*

v. *Hawley*, 3 Dem. 571; *Olmsted* v. *Long*, 4 Dem. 44.) Every court of record has inherent power over its own records to modify, amend and vacate them for clerical errors, independent of the special authority conferred by the statute, and this power is vested in the Surrogates' Courts. (*Vanderbilt* v. *Schreyer*, 81 N. Y. 648; *Ladd* v. *Stevenson*, 112 N. Y. 325; *Matter of City of Buffalo*, 78 N. Y. 362; *Vandenburgh* v. *Mayor*, 5 N. Y. Supp. 664; *Hogan* v. *Hoyt*, 37 N. Y. 300; *Hatch* v. *C. N. Bank*, 78 N. Y. 487; *Farish* v. *Austin*, 25 Hun, 430; *Matter of Flynn*, 136 N. Y. 287–291.)

O'BRIEN, J. The sole question involved in this appeal is whether a surrogate has power, under the circumstances disclosed, to correct a manifest clerical error, or error in fact, in the records of his own court. There was pending before the surrogate, when the order appealed from was made, an application by the executor for a final accounting. In that proceeding it was discovered that in a prior intermediate accounting, resulting in an order of the surrogate, dated June 11th, 1894, settling the accounts of the executor at that date, he was, in consequence of a mere clerical or arithmetical error, charged with over $10,000 in excess of the true amount. It is said that this error was made by the executor against himself, but, however that may be, there is no dispute as to the fact that it was made by some one and appears upon the record itself.

The executor applied to the surrogate by petition to correct the error in the former decree. The only objection made to this motion was that, as more than four years had elapsed since the entry of the decree containing the error, the surrogate had no power to correct it or change the record. This objection was sustained, and the order denying the application states that it was denied for want of power in the court to grant it after the lapse of such a long period of time; but the Appellate Division, by a divided court, has reversed the order and remitted the case to the surrogate for a hearing on the merits.

Limitations upon the power of the courts to do justice to suitors, or upon the right of parties to apply to the court for relief, whether by suit or otherwise, have their basis wholly in some statute or positive law. At common law there was no limitation whatever. The party aggrieved could sue or invoke the aid of the court in his behalf at any time. (Angell on Lim. §§ 12, 18; Wood on Lim. pp. 2, 36; *Williams* v. *Jones,* 13 East, 439.) The general powers of the Surrogate's Court are wholly statutory, but it certainly must possess such incidental powers as are necessary to a proper exercise of those expressly conferred. All courts, from their very nature and the object of their existence, must possess some inherent power, and the correction of their own records, when affected by some mistake or clerical error, would seem to be about as mild an exercise of such power as can well be imagined. This power is recognized and perhaps regulated by various statutes, but it does not proceed from or rest upon statutes, since it would exist without them. (*Hatch* v. *Central National Bank,* 78 N. Y. 487; *Vanderbilt* v. *Schreyer,* 81 N. Y. 646; *Ladd* v. *Stevenson,* 112 N. Y. 325.)

This court has held that, in the exercise of the power, the surrogate may vacate his own decree in furtherance of justice, in such a case as this, and that there was no time limitation that barred a suitor upon such an application. (*Sipperly* v. *Baucus,* 24 N. Y. 46.) When and under what circumstances the power may be exercised are questions addressed to the court in which the application is made. The lapse of time may have so affected the rights of other parties that the court, irrespective of any statute, would be justified in refusing the application. The legislature may, of course, forbid the exercise of the power after the lapse of a definite period of time, and the only question in this case is whether it has, in fact, done so.

It is asserted that two sections of the Code of Civil Procedure when read together prohibited the surrogate from opening the former decree and correcting the error, and if it be true, as claimed, that a statute has limited the exercise of the

power to two years from the entry of the decree, then, beyond all doubt, the surrogate was right in refusing to hear a question at a time when he was prohibited by statute from entertaining it. But before the executor can be barred from a hearing upon an application, apparently so just and reasonable, he may surely insist that a statute must be produced against him that speaks with no uncertain sound, that in express terms, or at least by necessary implication, prohibits the court from entertaining the petition. If the language of the statute does not come up to this test, it will not do to imply a prohibition against the exercise of such a useful and necessary power by a loose construction of general terms. If the lawmakers sought to limit the power of a surrogate to correct a very material clerical error in his own decree to two years from the entry, it was an easy thing to say so, and, therefore, we must expect to find language clearly expressive of such an intention. We ought not to say that they must have meant this or that, or anything not fairly comprehended in the language employed.

It is, therefore, important to read the statute in order to determine how far it forbids the surrogate to exercise the power invoked by the executor. Section 2481 of the Code, enumerating certain powers of the surrogate, provides, among other things, that he shall have the power in court or out of court (6) " To open, vacate, modify, or set aside, or to enter, as of a former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly-discovered evidence, clerical error, or other sufficient cause. The powers conferred by this subdivision must be exercised only in a like case and in the same manner, as a court of record and of general jurisdiction exercises the same powers. Upon an appeal from a determination of the surrogate, made upon an application pursuant to this subdivision, the General Term of the Supreme Court has the same power as the surrogate; and his determination must be reviewed, as if an original application was made to that term." Most of the powers here mentioned were exercised by the surrogate before the enactment of the

Code, and so far the statute is declaratory of the law as it previously existed. It must be conceded that there is nothing in the language above quoted which limits the power of the surrogate to hear such an application as was made to him by the executor in this case to two years from the date of the decree. It is only by reading with this provision of the Code another section relating to such motions in cases in the Supreme Court that the argument against the power of the surrogate is supposed to be made out. That section reads as follows: (Sec. 1290) "A motion to set aside a final judgment, for error in fact, not arising upon the trial, shall not be heard, except as specified in the next section, after the expiration of two years since the filing of the judgment roll." It is said that since the surrogate must exercise his powers to open and correct the record, only in a *like case* and *in the same manner* as the Supreme Court, he must necessarily act within the *same time*. That is but another way of saying that unless the surrogate is limited to the period of two years from the entry of the order in which he can entertain an application to correct it, he cannot and does not proceed in the *same manner* or in a *like case* as in the Supreme Court. This reasoning is so obviously faulty that no argument need be made to refute it. The statute, in speaking of a *like case*, means that the party making the motion must show the existence of the error or mistake in the same way as if the record was in the other court, and, in providing for the exercise of the power in the *same manner*, all that is meant is that the surrogate shall proceed in the same way to hear the application. Proof must be made, notice given and a judicial hearing of the parties had, but there is no more limit as to the time within which the application may be entertained since the enactment of the statute than there was before. There certainly is no express limitation of time upon the power of the surrogate contained in the statute, and it is impossible, I think, to show by any correct reasoning process that one is implied.

There is no force in the suggestion that the legislature must have intended to assimilate, in all respects, the power of the

Surrogate's Court over its own records to that possessed by the Supreme Court. If it did, it is quite sufficient to say that it has not expressed such intention. But there is no reason to suppose that it had any such intention in mind. The functions of the two courts are so radically different that the reason for a limitation in the one has but little if any application to the other. Litigants in courts of common law confront each other upon equal terms and upon well-defined issues. They are represented by counsel who are watchful of their interests and who have every opportunity to know the contents and scope of every order or judgment entered in the case. Under such circumstances, it is reasonable to suppose that any error or mistake of fact that has crept into the record, such as is involved in the case at bar, will be detected within two years. Not so with proceedings in probate courts. They are quite informal, conducted in many cases without the aid of counsel, frequently *ex parte*, by the representatives of deceased persons under such circumstances that a material error may lurk in the papers for many years without discovery. A court charged with such powers and duties should have ample authority over its own records for the correction of such mistakes as appear in this case, and, until the legislature shall limit the power by some language, clearer and more explicit than it has, it may entertain such an application as was made by this executor. (*In re Flynn*, 136 N. Y. 287.) I am aware that what has here been said may seem to be in conflict with the decision in *In re Tilden* (98 N. Y. 434) and *In re Hawley* (100 N. Y. 206), but the conflict, if any, is with the reasoning and not with the decision in those cases. The decision in both of them was doubtless correct, whatever may be said with respect to some of the reasons given.

In both cases the ground for opening the decree was not a clerical error such as is involved in the case at bar, nor indeed any error such as is contemplated by § 2481, regulating proceedings for opening and correcting manifest mistakes, but errors of substance made at the hearing which should have been corrected by appeal and not by motion. It was claimed

that the surrogate decided certain questions of fact or law erroneously, and that the decree was affected by such errors to the prejudice of the party applying for a rehearing. The other provisions of the Code covering regular appeals afforded the aggrieved party the true remedy. The questions that were involved and decided in those cases are not like the one now before us. They were not to correct a record so as to make it conform to what every one intended, but to review the decision upon the merits. In other words, it was an attempt to appeal by motion from an erroneous decision. In the case at bar the application was to correct a clerical error in the record. It was always a part of the inherent power of a court to supervise its own records, and we think that this particular power, at least, has not been limited or restricted by any statute.

The two years' limitation above referred to applies to applications to correct *final* judgments. It seems to be assumed on all sides that the intermediate order of the surrogate, which was sought to be corrected in this case, was a final judgment within the meaning of the section. It may be said that the order was final as far as it went, but this reasoning would convert almost every interlocutory order into a final one. But, as the question is not presented, we will assume for the purposes of the case, that the order is final within the meaning of the section, and we place our decision on the ground that the statute does not, in express words, or by any necessary implication, deprive the surrogate of any power to entertain the motion that he possessed before its enactment.

For these reasons, as well as those stated in the able prevailing opinion below, the order appealed from should be affirmed, with costs, and the question certified answered in the affirmative.

All concur, except PARKER, Ch. J., and VANN, J., not voting, and GRAY, J., absent.

Order affirmed.