(27 Misc. Rep. 563.)

## In re COOGAN.

(Supreme Court, Special Term, Albany County. May, 1899.)

1. TRANSFER TAX—UNITED STATES BONDS.
　　United States bonds are exempt from taxation, under the transfer tax law (Laws 1892, c. 399, § 22), since not property "over which this state has any jurisdiction for the purpose of taxation."

2. SURROGATES—POWER TO VACATE DECREES.
　　A surrogate may vacate so much of a former decree of his court as was made without any jurisdiction, though the time to appeal therefrom has expired.

3. REFUNDING TRANSFER TAX—STATUTE WHICH GOVERNS.
　　The procedure by a devisee for recovering back from the state a payment of a void transfer tax is governed by the statute in force when the proceeding is commenced, rather than the law in force when the testator died.

4. SAME—MANDAMUS.
　　Laws 1897, c. 284, providing that the state comptroller "shall," by order, direct the county treasurer to refund transfer taxes which have been illegally paid, is mandatory, so that mandamus will lie for a failure to comply therewith.

In the matter of the application of Michael Coogan for a writ of mandamus. Granted.

Buchanan & Lawyer and Robert E. Whalen, for petitioner.
Robert B. Bach, for comptroller.

CHESTER, J. The petitioner seeks by this proceeding to compel the refunding of a tax which he claims was erroneously paid on the transfer to him of certain registered bonds of the United States, under the will of Jesse B. Casterline, who died in Livingston county, November 14, 1894. The bonds in question, as well as other personal property, were bequeathed to the petitioner under this will. By an order of the surrogate's court of that county, made on the 6th day of May, 1895, a tax was assessed upon this legacy, including these bonds, under the law relating to taxable transfers of property. The amount of this tax upon the bonds, less the discount allowed by law for payment thereof within six months, was paid by the executors of the will to the county treasurer of Livingston county, May 13, 1895, and was in turn charged against the legacy of this petitioner, and deducted therefrom, as appears by the final account of the executors, which was judicially passed and settled by said surrogate's court in 1895. On January 9, 1899, upon the application of this petitioner, the same surrogate's court, after notice to the comptroller of the state, made an order that so much of the order dated the 6th day of May, 1895, as fixed and decreed a tax upon the transfer of said registered bonds of the United States be vacated, set aside, and in all things held for naught. A demand was then made upon the comptroller to direct the county treasurer of Livingston county to refund to the petitioner the amount of such tax, pursuant to section 225 of the tax law. The comptroller having refused to comply with that demand, the petitioner now seeks to compel him so to do, under the section last referred to. The law in respect to taxable transfers of property in force at the time of the death of the testator only permitted the imposition of such tax upon property "over which this state has any jurisdiction for the purpose of taxation." Laws 1892, c. 399, § 22. It does not require the citation of authorities to show that a state, in the exercise of the power of taxation, has no jurisdiction to tax the obligations of the United States, in violation of the provisions of the United States statutes exempting them from taxation. And it has recently been held in this state that United States bonds are exempt from assessment and taxation, under the transfer tax law of 1892, because they are property over which the state had no jurisdiction for the purposes of taxation. In re Sherman's Estate, 153 N. Y. 1, 46 N. E. 1032; In re Whiting's Estate, 150 N. Y. 27, 44 N. E. 715. That being so, the surrogate had no jurisdiction to assess a tax on the transfer of these bonds, and the tax was not merely an erroneous one, but illegal for want of any jurisdiction to impose it. Williams v. Board, 78 N. Y. 561; In re New York Catholic Protectory, 77 N. Y. 342; National Bank of Chemung v. City of Elmira, 53 N. Y. 49. The comptroller, however, questions the power of the surrogate to modify or vacate the order assessing the tax on the transfer of these bonds after the time to appeal therefrom has expired. Under Code Civ. Proc. § 2481, subd. 6, the surrogate has power to open, vacate, modify, or set aside a decree or order of his court "in a like case, and in

the same manner as a court of record and of general jurisdiction exercises the same powers." This may be done upon the application of any one for sufficient reason, in furtherance of justice. In re Flynn, 136 N. Y. 287, 36 N. E. 767; Ladd v. Stevenson, 112 N. Y. 325, 19 N. E. 842. The case presented to the surrogate was not one, as we have seen, where the order or decree was sought to be modified or vacated because of an irregularity, but because it was void, as having been made without jurisdiction. Freeman, in his well-known work on Judgments (4th Ed.) § 98, says:

"It is universally conceded that a judgment, void for want of jurisdiction over the person of the defendant, may be vacated on motion, irrespective of the lapse of time. * * * The decided preponderance of authority justifies, or rather requires, a court, on motion being made to vacate its judgment, because it was without jurisdiction over the person or the subject-matter, to inquire whether such is the fact, and, if so, to grant the relief sought."

That the surrogate has power to vacate so much of a former decree of his court as was made without any jurisdiction, after the time to appeal therefrom had expired, was distinctly held in Re Underhill, 117 N. Y. 471, 22 N. E. 1120. That was a case where a surrogate, on a final accounting of an executor under a will, gave judgment as a part of a decree of that court, rendered upon the final accounting of an executor, in favor of the executor against a legatee for an amount found to have been overpaid to him by the executor, and afterwards vacated that part of the decree giving such judgment, and an appeal was taken to the court of appeals from an affirmance by the general term of such order of vacation, and it was said by Mr. Justice Peckham, in writing the opinion of the court of appeals (page 479, 117 N. Y., and page 1122, 22 N. E.):

"It is, however, urged by the appellants that, if there were no jurisdiction to incorporate in the decree the provision which the surrogate has set aside, such provision was but part of a decree upon a subject-matter over which he had full jurisdiction, and that any mistake made in any of its parts was an error reviewable on appeal; but the whole decree must stand as it was entered until a reversal thereof or a part of it on such appeal. This is not such a case. It is an affirmative, special, and separate judgment, although in form contained in the general decree; and it is a judgment which the surrogate was, as we have seen, wholly without any jurisdiction to enter. He cannot obtain jurisdiction to enter it by formally making it a part of a decree which he has authority to make, nor does he by such a movement change its essential character of a separate judgment, liable to be set aside on motion, as was done in this case."

So here, while the surrogate had authority to assess the estate of the decedent upon the value of the taxable estate transferred under his will, yet he had no power, while exercising that jurisdiction, to assess a tax upon such transfer of United States bonds as a part of such estate, because they were property over which this state then had no jurisdiction for the purpose of taxation. His order, therefore, to that effect was an absolute nullity, made without any jurisdiction; and, if I am right in regarding the Underhill Case as in point, he had a right to vacate so much of the order as imposed a tax upon the transfer of these bonds to the petitioner, even after the time to appeal therefrom had expired. It therefore appears that this petitioner has had his legacy diminished by the

amount which was paid by the executors under this transfer tax upon these bonds, which tax was imposed without any authority of law, and without jurisdiction, and that the state, or rather the county treasurer of Livingston county, as the collecting agency of the state, under the law relating to taxable transfers, has the amount which has been paid in liquidation of this unlawful tax, and the question is presented as to whether the state can be compelled to pay the same back to the petitioner. It never belonged to the state. It was unlawfully taken from the executors, and by them in turn from the petitioner. He asks for a mandamus to compel it to be refunded to him, under section 225 of the act in relation to taxation, as amended by chapter 284 of the Laws of 1897. The portion of the section under which the application is made is as follows:

"If after the payment of any tax in pursuance of an order fixing such tax, made by the surrogate having jurisdiction, such order be modified or reversed, on due notice to the comptroller of the state, the state comptroller shall, by order, direct and allow the treasurer of the county, or the comptroller of the city of New York, to refund to the executor, administrator, trustee, person or persons, by whom such tax had been paid, the amount of any moneys paid or deposited on account of such tax in excess of the amount of the tax fixed by the order modified or reversed, out of the funds in his hands or custody, to the credit of such taxes, and to credit himself with the same in his quarterly account rendered to the comptroller of the state under this act; but no application for such refund shall be made after one year from such reversal or modification."

The order of January 9, 1899, made by the surrogate, was in effect an order modifying his prior order, fixing the tax, and the case is therefore brought within the provision of the statute above quoted. This provision was first enacted in 1897. It matters not that it was not in the law in force at the time of the death of the testator, for the procedure or mode of attaining a right is governed by the statute in force when the proceeding is commenced. In re Davis' Estate, 149 N. Y. 539, 44 N. E. 185. But the statute in force at the time of the death of the testator (Laws 1892, c. 399, § 6) contained a provision requiring the comptroller to cause the amount of any erroneous or illegal payment of a tax under the law to be refunded. So it is not a matter of much importance, in my opinion, which statute applies to this case. Both statutes, however, show that it has been and is the policy of the state, as clearly expressed in these legislative enactments, to be just enough to its citizens to provide a remedy for refunding taxes under this law which have been erroneously or unlawfully exacted from them. It is undoubtedly the general rule of law, as urged by the defendant, that an action cannot be maintained to recover an illegal tax voluntarily paid under a mistake of law. But that principle can have no application to a case where, as here, the legislature has provided a remedy for refunding a tax unlawfully collected under this law, regardless of whether it was paid voluntarily or under duress. Adams v. Board, 154 N. Y. 619, 49 N. E. 144; People v. Wemple, 141 N. Y. 471, 36 N. E. 506. Nor do I think this application runs counter to the principle that a mandamus will not lie to compel a public officer to do an act with respect to which he may exercise his discretion, for this is not a case where the refunding rests in the discretion of the comptroller. The

language of the statute in question here is imperative, and not permissive. It provides that the "state comptroller shall by order direct and allow the treasurer of the county to refund" the tax. It has even been held that where the statute was permissive only, and authorized a public officer to do an act for the sake of justice, it will be construed as imperative, and that the execution of the power may be enforced as a duty. People v. Supervisors of Otsego Co., 51 N. Y. 401; People v. Supervisors of Madison Co., 51 N. Y. 442; People v. Supervisors of Livingston Co., 68 N. Y. 114; People v. Common Council of City of Buffalo, 140 N. Y. 300, 35 N. E. 485.

The motion for a peremptory writ of mandamus is granted, with $50 costs to the petitioner.

Motion granted, with $50 costs.