MORGAN, Comptroller, et al. v. COWIE et al.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. TRANSFER TAX—ASSESSMENT—MODIFICATION OF ORDER.
   While Laws 1892, c. 399, § 13, limiting the time to 60 days for an appeal from an order of the surrogate assessing a transfer tax, is applicable to purely legal errors, the power vested in the surrogate by Code Civ. Proc. § 2481, subd. 6, to vacate or modify a decree or order of his court, or grant a new trial, for fraud or newly-discovered evidence, is independent of the right of appeal, and may be exercised to modify an order assessing a transfer tax for an error in fact after the time prescribed by section 13 has expired.

2. SAME—REASSESSMENT—REVERSAL.
   Where a petition for the reduction of a transfer tax asks such reduction only for one party in interest, and the modified order readjusts the value of the shares of all the legatees and parties in interest, so as to reduce the amount of the tax, and it does not appear whether or not the surrogate has arrived at the reassessments properly, such order will be reversed, and another assessment directed.

3. SAME—BASIS OF ASSESSMENTS.
   An assessment of the transfer tax should be based on the value of the property at the time of the testator's death.

Appeal from surrogate's court, Onondaga county.

Proceedings by William J. Morgan, comptroller of the state of New York, and Nicholas Grumbach, county treasurer of Onondaga county, against William Cowie and James Hunter, as executors of the last will of James Hardie, deceased, to assess the cash value of the legacies and devises in the will of said deceased. From an order amending an order making such assessment, the comptroller and county treasurer appeal. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and LAUGHLIN, JJ.

John McLennan, for appellants.
Leroy B. Williams, for respondents.

SPRING, J.   In 1896 an appraiser was appointed by the surrogate
of Onondaga county to fix the fair market value of the estate which
passed by the will of James Hardie, deceased, with a view to the
imposition of the transfer tax (chapter 399, Laws 1892).   A hear-
ing was had before the appraiser, and his report was filed, and an
order entered in the surrogate's court on the 11th day of November,
1896, determining the value of the interest of each person liable to
assessment, with the amount of the tax assessed.   No appeal was
taken from this determination of the surrogate.   From the decree
entered on the judicial settlement of the accounts of the executors
November 1, 1898, it appears that several legacies in the will of
the testator had lapsed by reason of the death of the legatees prior
to the decease of the testator.   There was no residuary clause in
the will, and the decree of the surrogate's court adjudged that the
lapsed portions of the estate passed under the statute of distribu-
tion.   This added materially to the interest of the widow of the
testator.   The tax had been imposed and paid by the executors at 5
per cent. upon the shares of these collateral legatees; whereas, if
the widow was chargeable with its payment, her tax was only at
the rate of 1 per cent.   On the 11th day of July, 1899, the execu-
tors of Hardie applied by petition to the surrogate's court for a
modification of the order fixing the amount of the transfer tax, and
for a reduction of the same as to the widow's share to 1 per cent.
thereon.   The widow was then dead, but the ground for the applica-
tion was the excessive tax fixed as affecting her share.   The comp-
troller appeared by counsel, and objected to the power of the sur-
rogate's court to modify the order, as the time to appeal had long
since expired.   Section 2481, subd. 6, of the Code of Civil Procedure
vests the surrogate with power, among other things, "to open, va-
cate, modify, or set aside, or to enter, as of a former time, a decree
or order of his court; or to grant a new trial or a new hearing for
fraud, newly-discovered evidence, or other sufficient cause."   This
power "must be exercised only in a like case and in the same man-
ner" as a court "of general jurisdiction exercises the same power."
Upon an appeal the determination must be reviewed by the appellate
court as if the application were originally made in that court.   It
was evidently designed to make the practice in opening the decrees
of the surrogate's court conform to that in courts of record.
   The point is made that the only remedy by which the determina-
tion of the surrogate assessing the tax can be reviewed is by the
appeal prescribed by section 13 of the act referred to, and which
limits the period to 60 days from the fixing of the tax by the surro-
gate.   That is doubtless correct as to purely legal errors.   The power
given by the subdivision of the Code quoted from is entirely inde-
pendent, however, of the right of appeal.   The authority of a court
to modify its own decrees for an error in fact, newly-discovered evi-

63 N.Y.S.—39

dence, or any cause extrinsic of the record, is an inherent one, and is vested in every court with such restrictions as the legislature has seen fit to impose. In a court of record the manner and cases in which a judgment may be vacated for irregularity or error in fact are specifically defined. Title 3, c. 11, Code Civ. Proc. The application for modification "for error in fact not arising upon the trial" must be made within two years from the entry of the judgment. Code, § 1290. It has been held that, while "the surrogate must exercise his power to open and correct the record only in a like case and in the same manner as the supreme court," the limitation as to time does not apply to that official or to his court. In re Henderson, 157 N. Y. 423, 52 N. E. 183. The tax is a succession tax assessed upon the market value of each share liable to its payment at the time of the death of the decedent. In re Westurn's Estate, 152 N. Y. 93, 46 N. E. 315. The surrogate may at any time, upon the application of a party interested, or on his own motion, appoint an appraiser to fix the value at the time of the transfer. He is not required to wait until there has been an actual ascertainment of the debts of the decedent, but the time of the selection is in the sound discretion of the surrogate. Case last cited. The executor may also pay the tax as soon as determined. The appointment and report of the appraiser, and the determination of the surrogate upon appeal, and the payment of the tax may all be accomplished within a few months after the issue of the letters testamentary or of administration, and the value of the estate of the decedent as then fixed may be subject to material increase or diminution after the tax has been paid. In this case the testator died August 10, 1895. His will was admitted to probate December 4, 1895; the appraiser appointed January 9, 1896; and the taxes assessed by the final order of the surrogate were paid by the executors November 28, 1896, —all within a year from the time of the issue of the letters. The power is given to the surrogate to appoint an appraiser "as often as and whenever occasion may require." Section 11. If property, through collusion or inadvertently, has escaped assessment, the court is not without a remedy to reach it, although the time for appeal within the language of the act has expired. If facts have arisen since the imposition and payment of the tax showing it was improperly assessed, or excessive in amount, or without the jurisdiction of the court to tax, then the court possesses the power to redress the wrong done. Jessup, Surr. Prac. p. 103; In re Henderson, 157 N. Y. 423, 52 N. E. 183; In re Flynn, 136 N. Y. 287, 32 N. E. 767; In re Coogan, 27 Misc. Rep. 563, 59 N. Y. Supp. 14; Ladd v. Stevenson, 112 N. Y. 325, 19 N. E. 842; In re Fulton's Estate, 30 Misc. Rep. 70, 62 N. Y. Supp. 995. Any other rule would be subversive of the rights of the parties interested, and a narrowing of the boundaries of the court intrusted with the execution of this important law to a compass not contemplated or essential. In fact, provision is made in subsequent statutes for the refunding of the tax erroneously paid, irrespective of the fact that the time to appeal has long elapsed. Laws 1896, c. 908, § 225; Laws 1897, c. 284, § 225.

The allegations in the petition in this matter are very meager,

and the proofs fail to show any diligence on the part of the executors during the original proceedings to ascertain who of the legatees were alive at the time of the death of the testator. The original order, however, does show that these legatees were supposed to be alive, as their shares were assessed. The further fact appears that on the judicial settlement it was known that these bequests had lapsed by reason of the death of these beneficiaries, and the decree directed distribution in accordance with the true situation. Both the original order and the decree on judicial settlement were received in evidence on this application to modify the order of the assessment, and they constituted substantially all the proofs presented upon which the modification by the surrogate hinged so far as it affects the share of the widow. This proceeding comes to this court to hear de novo, and a rehearing to determine the proper tax to be imposed upon the share of the widow is unnecessary, as no different result could be expected. On the vital question in the case, therefore, we are satisfied that the surrogate possessed the power to modify his order, and that the reduction of the tax assessed against the share of the widow was proper. The difficulty with the modified order, however, is that it readjusts the value of the shares of all the numerous legatees and parties in interest. The petition does not ask for any such modification of the original order, and there are no data from which we can say the surrogate has arrived at the reassessments properly. If he has taken into the account the costs and expenses of the litigation contained in the decree of the judicial settlement, or the expenses of managing the real estate, such deductions might be improper, as the value at the time of the death of the testator is the true test. In re Davis' Estate, 149 N. Y. 539, 44 N. E. 185. In the readjustment of the value of the share of each person chargeable with payment of the tax there has been a reduction, and, of course, these parties cannot complain; but the effect of it is to reduce the amount of the tax, and the comptroller is entitled to know precisely on what basis the reassessment was made. While the amount involved is not large, we see no other course than to reverse the order of the surrogate, and remit the matter to him to make a reassessment, upon due and proper notice, if warranted by the facts, having in view the value of the property at the time of the transfer. The costs and expenses are to be adjusted by the surrogate upon the rehearing.

So ordered. All concur, except McLENNAN, J., not voting.