WILLIAM J. MORGAN, Comptroller of the State of New York, and NICHOLAS GRUMBACH, County Treasurer of Onondaga County, Appellants, v. WILLIAM COWIE and JAMES HUNTER, as Executors, etc., of JAMES HARDIE, Deceased, Respondents.

*Transfer tax — the surrogate may, after the time to appeal has expired, modify his decree fixing it — the readjustment must be as of the testator's death — the remedy for purely legal errors is by appeal.*

A surrogate has power, under subdivision 6 of section 2481 of the Code of Civil Procedure, to modify an order fixing the transfer tax upon an estate, after the time to appeal therefrom has expired, where it is shown that certain legacies, upon which a five per cent tax was imposed, had lapsed by the death of the legatees prior to that of the testator, and passed to the testator's widow, in whose hands they were chargeable with a tax of only one per cent.

In readjusting the tax, the value of the shares of the persons chargeable therewith should be determined as of the time of the testator's death.

*Semble,* that the only remedy for the correction of purely legal errors involved in the surrogate's determination is by the appeal prescribed in section 13 of the Transfer Tax Law (Laws of 1892, chap. 399).

APPEAL by the plaintiffs, William J. Morgan, Comptroller of the State of New York, and another, from an order and decree of the Surrogate's Court of Onondaga county, entered in said Surrogate's Court on the 31st day of October, 1899, amending an order entered in that court on the 11th day of November, 1896, assessing the cash value of the legacies and devises in the will of James Hardie, deceased.

*John McLennan,* for the appellants.

*Leroy B. Williams,* for the respondents.

SPRING, J. :

In 1896 an appraiser was appointed by the surrogate of Onondaga county to fix the fair market value of the estate which passed by the will of James Hardie, deceased, with a view to the imposition of the transfer tax. (Chap. 399, Laws of 1892.)

A hearing was had before the appraiser and his report was filed and an order entered in the Surrogate's Court on the 11th day of November, 1896, determining the value of the interest of each person liable to assessment with the amount of the tax assessed. No appeal was taken from this determination of the surrogate.

From the decree entered on the judicial settlement of the accounts of the executors November 1, 1898, it appears that several legacies in the will of the testator had lapsed by reason of the death of the legatees prior to the decease of the testator. There was no residuary clause in the will, and the decree of the Surrogate's Court adjudged that the lapsed portions of the estate passed under the Statute of Distributions. This added materially to the interest of the widow of the testator. The tax had been imposed and paid by the executors at five per cent upon the shares of these collateral legatees, whereas if the widow was chargeable with its payment her tax was only at the rate of one per cent.

On the 11th day of July, 1899, the executors of Hardie applied by petition to the Surrogate's Court for a modification of the order fixing the amount of the transfer tax and for a reduction of the same as to the widow's share to one per cent thereon. The widow was then dead, but the ground for the application was the excessive tax fixed as affecting her share. The Comptroller appeared by counsel and objected to the power of the Surrogate's Court to modify the order as the time to appeal had long since expired. Section 2481, subdivision 6, of the Code of Civil Procedure, vests the surrogate with power, among other things, "To open, vacate, modify or set aside, or to enter, as of a former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause." This power "must be exercised only in a like case and in the same man-

ner" as a court " of general jurisdiction exercises the same powers." Upon an appeal the determination must be reviewed by the appellate court as if the application were originally made in that court. It was evidently designed to make the practice in opening the decrees of the Surrogate's Court conform to that in courts of record.

The point is made that the only remedy by which the determination of the surrogate assessing the tax can be reviewed is by the appeal prescribed by section 13 of the act referred to (Laws of 1892, chap. 399) and which limits the period to sixty days from the fixing of the tax by the surrogate. That is doubtless correct as to purely legal errors. The power given by the subdivision of the Code quoted from is entirely independent, however, of the right of appeal. The authority of a court to modify its own decrees for an error in fact, newly-discovered evidence, or any cause extrinsic of the record, is an inherent one and is vested in every court with such restrictions as the Legislature has seen fit to impose. In a court of record the manner and cases in which a judgment may be vacated for irregularity or error in fact are specifically defined. (Title 3, chap. 11, Code Civ. Proc. §§ 1282–1292.) The application for modification " for error in fact, not arising upon the trial," must be made within two years from the entry of the judgment. (Code, § 1290.) It has been held that while " the surrogate must exercise his powers to open and correct the record, only in a *like case* and *in the same manner* as the Supreme Court," the limitation as to time does not apply to that official or to his court. (*Matter of Henderson*, 157 N. Y. 423.)

The tax is a succession tax assessed upon the market value of each share, liable to its payment at the time of the death of the decedent. (*Matter of Westurn*, 152 N. Y. 93.)

The surrogate may at any time, upon the application of a party interested, or on his own motion, appoint an appraiser to fix the value at the time of the transfer. He is not required to wait until there has been an actual ascertainment of the debts of the decedent, but the time of the selection is in the sound discretion of the surrogate. (Case last cited.) The executor may also pay the tax as soon as determined. The appointment and report of the appraiser, and the determination of the surrogate upon appeal and the payment of the tax, may all be accomplished within a few months after the issue of the letters testamentary or of administration, and the value of the

estate of the decedent, as then fixed, may be subject to material increase or diminution after the tax has been paid. In this case the testator died August 10, 1895; his will was admitted to probate December 4, 1895; the appraiser appointed January 9, 1896, and the taxes assessed by the final order of the surrogate were paid by the executors November 28, 1896, all within a year from the time of the issue of the letters.

The power is given to the surrogate to appoint an appraiser " as often as and whenever occasion may require." (Laws of 1892, chap. 399, § 11.) If property, through collusion or inadvertently, has escaped assessment, the court is not without a remedy to reach it, although the time for appeal, within the language of the act, has expired. If facts have arisen since the imposition and payment of the tax, showing it was improperly assessed or excessive in amount, or without the jurisdiction of the court to tax, then the court possesses the power to redress the wrong done. (Jessup Surr. Pr. 1005; *Matter of Henderson*, 157 N. Y. 423; *Matter of Flynn*, 136 N. Y. 287; *Matter of Coogan*, 27 Misc. Rep. 563; *Ladd* v. *Stevenson*, 112 N. Y. 325; *Matter of Fulton*, 30 Misc. Rep. 70.)

Any other rule would be subversive of the rights of the parties interested, and a narrowing of the boundaries of the court intrusted with the execution of this important law to a compass not contemplated or essential. In fact, provision is made in subsequent statutes for the refunding of the tax erroneously paid, irrespective of the fact that the time to appeal has long elapsed. (Laws of 1896, chap. 908, § 225, as amd. by Laws of 1897, chap. 284.)

The allegations in the petition in this matter are very meagre, and the proofs fail to show any diligence on the part of the executors during the original proceedings to ascertain who of the legatees were alive at the time of the death of the testator. The original order, however, does show that these legatees were supposed to be alive, as their shares were assessed. The further fact appears that on the judicial settlement it was known that these bequests had lapsed by reason of the death of these beneficiaries, and the decree directed distribution in accordance with the true situation. Both the original order and the decree on judicial settlement were received in evidence on this application to modify the order of the assessment, and they constituted substantially all the proofs pre-

sented upon which the modification by the surrogate hinged so far as it affects the share of the widow. This proceeding comes to this court to hear *de novo*, and a rehearing to determine the proper tax to be imposed upon the share of the widow is unnecessary, as no different result could be expected.

On the vital question in the case, therefore, we are satisfied that the surrogate possessed the power to modify his order, and that the reduction of the tax assessed against the share of the widow was proper.

The difficulty with the modified order, however, is that it readjusted the value of the shares of all the numerous legatees and parties in interest. The petition does not ask for any such modification of the original order, and there are no data from which we can say the surrogate has arrived at the reassessments properly. If he has taken into account the costs and expenses of the litigation contained in the decree of the judicial settlement, or the expenses of managing the real estate, such deductions might be improper, as the value at the time of the death of the testator is the true test. (*Matter of Davis*, 149 N. Y. 539.)

In the readjustment of the value of the share of each person chargeable with payment of the tax, there has been a reduction, and, of course, these parties cannot complain; but the effect of it is to reduce the amount of the tax, and the Comptroller is entitled to know precisely on what basis the reassessment was made. While the amount involved is not large, we see no other course than to reverse the order of the surrogate and remit the matter to him to make a reassessment, upon due and proper notice, if warranted by the facts, having in view the value of the property at the time of the transfer. The costs and expenses are to be adjusted by the surrogate upon the rehearing.

All concurred, except McLENNAN, J., not voting.

Order and decree of the Surrogate's Court reversed, and the Surrogate's Court directed to make a reassessment upon due and proper notice. The costs and expenses to be adjusted by the surrogate upon the rehearing.