(Surrogate's Court, Oneida County. September, 1903.)

1. SURROGATE'S COURT—VACATING DECREE.
   Code Civ. Proc. § 1290, providing that a motion to set aside a final judgment for error in fact not arising upon the trial shall not be heard, except as specified in the following section, after two years from the filing of the judgment roll, does not apply to the Surrogate's Court, and he has power without limitation as to time to vacate or modify a decree in a proper case.

2. TRANSFER TAX—VOLUNTARY PAYMENT—RECOVERY.
   An uncle conveyed property to his nephew, who did not record the deed. Thereafter the uncle devised the nephew a life estate in the same property, and at the appraisal for the transfer tax the nephew testified falsely that his uncle died seised of the property, and the nephew paid the transfer tax on his life estate. *Held*, that eight years after the entry fixing the tax generally the judgment will not be modified by deducting the tax paid by the nephew, he having paid the same voluntarily, and with a full knowledge of the facts.

In the matter of the estate of Joshua Mather. Motion to modify order assessing transfer tax. Granted.

Lindsley & Mackie, for Ida Mather Lovelace and others, as administrators.

Josiah Perry, for Maud Mather McChesney and special guardian.

Charles R. Coville, for State Comptroller.

CALDER, S.   This is an application made by the administrators of the estate of Charles W. Mather, deceased, and by certain of his heirs at law to modify an order dated January 8, 1895, assessing a transfer tax upon the estate of Joshua Mather, deceased, by deducting therefrom the sum of $4,852, the amount of the tax paid by Charles W. Mather upon his life estate in the Arcade property, situate in the city of Utica, N. Y., and by excluding therefrom the sum of $175,000, the amount at which said property was valued, upon the ground that the same was not owned by Joshua Mather at the time of his death, but was the property of said Charles W. Mather, and that the Surrogate's Court did not have jurisdiction over it for any purpose of taxation.

Joshua Mather died on the 18th day of August, 1893, leaving a last will and testament, dated January 10, 1893.   Said will, among other things, devised to his nephew, Charles W. Mather, a life estate in his real property, with power to dispose of the same by will to any or all of his children, and, in case he did not exercise that right, then said real property should go to the heirs of said Charles W. Mather in equal portions.   On October 2, 1893, proceedings were instituted to assess the transfer tax, and on January 8, 1895, an order was made fixing the value of the life estate of said Charles W. Mather at the sum of $216,331, in which was included the sum of $175,000, the value of the Arcade property, and the amount of the tax was fixed at $10,911, in which was included the sum of $4,852, the tax upon his life estate in said Arcade property, and the tax upon the remainder over was suspended for the reason that it was subject to be defeated. Said sum of $4,852 was paid by Charles W. Mather personally to the treasurer of Oneida county on or about February 12, 1895.   Upon the hearing before the appraiser said Mather testified that at the time of his death Joshua Mather owned certain pieces of real property, among them being "lot and store known as 'Arcade Property,' being 120 feet on Genesee street, thence 56 feet and 40 feet to Bleecker street, thence along Bleecker street 152 feet to Charlotte street, thence northerly along Charlotte street 80 feet, thence 150 feet to Genesee street, the place of beginning."   Said Charles W. Mather died November 4, 1899, and administrators of his estate were duly appointed by the Surrogate's Court of Oneida county.   On or about the 1st day of April, 1891, Joshua Mather, for the expressed consideration of $1, executed and delivered to said Charles W. Mather a deed of the Arcade property, above referred to, and the same was owned by the said grantee at the time of his death.   Said deed, however, was not put on record until November 11, 1899.   The application for the relief herein sought was made on or about February 17, 1903.

It is urged in behalf of the State Comptroller that the Surrogate's Court has not power to vacate or modify the order in question, as the remedy of petitioners was by appeal, and the time to do so has expired; and that the relief asked for is not based upon any of the reasons stated in section 2481, subd. 6, of the Code of Civil Procedure, which, among other things, provides that the surrogate has power "to open, vacate, modify, or set aside, or to enter, as of a former

time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers conferred by this subdivision must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises the same powers." Without doubt the remedy to correct legal errors is by appeal as provided in the tax law (Laws 1896, p. 875, c. 908, § 232) applicable to transfer taxes, which limits the time to 60 days from the fixing of the tax; but I do not think the proceeding here to review the assessment is based purely upon legal errors. There is no time limit upon a Surrogate's Court to vacate or modify its decree in a proper case, provided it be exercised in a like case and in the same manner as a court of record. There is nothing in the section quoted above which limits the time in which an application of this character may be presented. It is only by reading section 1290 in connection with section 2481, subd. 6, that any limitation of time could be placed upon the surrogate's decrees. Section 1290 provides:

"A motion to set aside a final judgment, for error in fact, not arising upon the trial, shall not be heard, except as specified in the next section after the expiration of two years since the filing of the judgment roll."

It was expressly held in Matter of Henderson, 157 N. Y. 423, 52 N. E. 183, that the two-years limitation did not apply to the Surrogate's Court, and in construing a portion of subdivision 6, above referred to, the opinion states:

"'A like case' means that the party making the motion must show the existence of the error or mistake in the same way as if the record was in the other court; and * * * by 'the same manner' all that is meant is that the surrogate shall proceed in the same way to hear the application. Proof must be made, notice given, and a judicial hearing of the parties had, but there is no more limit as to the time within which the application may be entertained since the enactment of the statute than there was before. There certainly is no express limitation of time upon the power of the surrogate contained in the statute, and it is impossible to show by any correct reasoning process that one is implied."

In addition to Matter of Henderson, supra, it was held in Matter of Flynn, 136 N. Y. 287, 32 N. E. 767; Matter of Coogan, 27 Misc. Rep. 563, 59 N. Y. Supp. 111; Morgan v. Cowie, 49 App. Div. 612, 63 N. Y. Supp. 608; Matter of Sherar, 25 Misc. Rep. 138, 54 N. Y. Supp. 930; Matter of Scrimgeour, 80 App. Div. 388, 80 N. Y. Supp. 636,— that the surrogate has the power to entertain a proper application after the time to appeal has expired, or after two years have elapsed since the entry of the order.

These applications are within the section of the Code, and the Surrogate's Court has power to consider them and determine what is proper in the premises.

The merits of this case, however, do not warrant a modification of the order wherein it is sought to modify or strike from the order the sum which was paid by Mather upon his life estate in said Arcade property. He knew that said property belonged to him when he testified before the appraiser that Joshua Mather owned it at the time of his death. The deed was in his own handwriting, and had been in his possession for about four years, and a like space of time elapsed after the payment of the tax before his death. It had beer

the subject of some conversation among certain members of his family, and the matter was referred to in the presence of others. The transfer of property of the value of $175,000 and the payment of a tax of nearly $5,000 were not such ordinary events that one could forget that he was the owner of the property, or was not liable to pay the tax thereon. For some reason, undisclosed in the record, he chose to penalize himself. Had he testified as to the true ownership of the property, no tax could have been imposed upon him as far as this property is concerned; but he preferred to give testimony which he knew would result in the imposition of the tax in question. Facts existed outside of the record, which were within his knowledge, that would have rendered any tax void. He knew the real condition. It was not unlawfully imposed or collected, but was voluntarily paid by him. The circumstances do not warrant the conclusion that he made a mistake, and upon the facts in this case his representatives cannot recover it.

In Tripler v. Mayor, 125 N. Y. 627, 26 N. E. 723, the court said:

"But one against whom a judgment is rendered, or upon whose land an assessment is laid, apparently valid, although in truth utterly void by reason of facts outside of the record, who pays it with full knowledge of those facts, and without the slightest attempt to enforce payment of either the judgment or assessment, cannot, in any just view of the case, be regarded as making an involuntary payment by coercion in law."

In Vanderbeck v. City of Rochester, 122 N. Y. 285, 25 N. E. 408, it was held that "a voluntary payment of an assessment, made under a mistake of law, but with full knowledge of the facts, and not induced by any fraud or improper conduct on the part of the payee, cannot be recalled." I think this rule should be applied to those who represent Charles W. Mather. There was no fraud or coercion on the part of the state. In my judgment, the case here presented is clearly distinguishable from those referred to by counsel for petitioner. The application, as far as modifying the order so as to strike therefrom the amount paid by Mather, should be denied.

A different condition, however, presents itself as to that part of the order which suspended the tax upon the real property in question. Upon the evidence of Mather, the appraiser in the performance of his duty properly held that under the will of Joshua Mather there was a suspended tax, and those of Charles W. Mather's heirs who should pay the same could only be determined upon his death. It is apparent, however, that his children succeeded to said property, not as devisees under the will of Joshua Mather, but by reason of being heirs of the grantee in the deed above referred to. There was no taxable transfer to them. Clearly, no tax could have been assessed against them or suspended until the happening of a future event as to property which their father owned. The order as to that was illegal and void, and the same should be modified by striking therefrom any provision as to the suspended tax upon said property, or as to the value of said property as far as it affects any heir at law of Charles W. Mather.

An order in accordance with the foregoing may therefore be entered.

Decreed accordingly.