In the Matter of the Estate of JOHANN F. HACKFELD, Deceased.

Surrogate's Court, New York County, January 13, 1943.

*Sherwood E. Silliman, Charles H. Lawson* and *Reuben D. Silliman* for Frederick Rodiek, as ancillary executor, petitioner.

*Mathias F. Correa, United States Attorney for the Southern District of New York,* for the United States of America and others, respondents.

*James F. Donnelly* for William R. Rodenberg and another, respondents.

*Arthur J. W. Hilly* and others, respondents in person.

FOLEY, S. This is an intermediate application in a pending accounting proceeding. The ancillary executor seeks authority for the payment of reasonable administration expenses, after approval of the amounts by the Surrogate.

Dispute has arisen as to the effect of a judgment recovered by the United States in the District Court for the Southern District of New York against the ancillary executor on April 7, 1939, in the sum of $1,605,057.32. The action was based upon

the claim that Johann Friedrich Hackfeld, the decedent, had fraudulently misrepresented his status as a citizen of the United States under the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 1 *et seq.*) and had procured from the government, under an order of the President of the United States, the repayment of property which the Alien Property Custodian had seized from him.

The complaint was based upon two theories — fraud and mistake of law and fact. The form of the judgment, however, ultimately rested upon a direction of verdict in favor of the government by Judge Coxe who tried the case. He found that the Presidential allowance of Hackfeld's claim was made under a mistake of law. He dispensed with the necessity of ruling upon the question of fraud. The form of the judgment is one for the recovery of money only.

Shortly after the entry of the judgment, and in the year 1939, the ancillary executor presented an application to this court for leave to pay out of the assets of the estate in his hands a limited amount for the fees of his attorneys and the necessary disbursements in order to initiate an appeal from the original judgment. That application was denied by me. (*Matter of Hackfeld,* 171 Misc. 727.)

My determination was based upon the ground that the funds which were repaid to the decedent and came into the possession of the ancillary executor as assets of the estate were originally held in trust by the Alien Property Custodian; that they constituted earmarked funds belonging to the Federal government; that restitution had been decreed by the United States District Court and that they could no longer be subjected to administration expenses since they had been traced and identified as the funds of the government. (Citing *Matter of Manning,* 244 App. Div. 9, affd. *sub nom. Matter of Dunbar & Sullivan Dredging Co.* v. *Fidelity & Deposit Co.,* 268 N. Y. 690.) My order was affirmed by the Appellate Division, without opinion. (259 App. Div. 707, leave to appeal denied, 259 App. Div. 805, 283 N. Y. 778.)

Subsequent to the rendition of the latter decision, the judgment of the District Court was affirmed by the Circuit Court of Appeals (*United States* v. *Rodiek,* 117 F. 2d 588; 120 F. 2d 760) and by the Supreme Court (*Rodiek* v. *United States,* 315 U. S. 783). While it is not of importance here, it is interesting to note that in the Supreme Court of the United States the affirmance resulted because of the fact that the six judges who sat in the case divided equally. The remaining three judges

had disqualified themselves because they had been connected with the executive branch of the government during the period of the custody of the funds.

It now clearly appears that the original decision of the Surrogate was based upon a misunderstanding of the true nature of the action brought by the government and of the effect of the judgment which it had obtained against the legal representative of this estate. The mistaken impression was derived from the argument of counsel for the government, made without design to mislead the court, but, nevertheless, urged by way of argument for the position which the Surrogate ultimately took.

In this aspect the situation is much like that involved in *Matter of Kane* (247 N. Y. 219) where an argument and concession of counsel for the State Tax Commission, unintentional but erroneous, subsequently led the Court of Appeals, in an opinion written by Chief Judge CARDOZO, to grant reargument and reverse its prior determination (246 N. Y. 498).

I accordingly hold that the contention of the government that my prior determination is conclusive here, must be overruled. The prior order of the Surrogate is vacated.

An order or decree of this court may be reopened and corrected when it was based upon a mistake of fact. The court then acts in furtherance of justice for the purpose of conforming the record to the truth. (Surrogate's Ct. Act, § 20, subd. 6; *Matter of Fuller*, 227 App. Div. 801, affd. 254 N. Y. 519; *Matter of Henderson*, 33 App. Div. 545, affd. 157 N. Y. 423; *People ex rel. Hirschberg* v. *Orange Co. Ct.*, 271 N. Y. 151, citing *Bohlen* v. *Metropolitan Elev. Ry. Co.*, 121 N. Y. 546.)

In *Matter of Fuller* (*supra*) the Surrogate denied an application to vacate the final accounting decree. The Appellate Division, Second Department, reversed the order below. The appellant was a beneficiary under the will in which the testatrix directed the purchase of an annuity for him. Upon the advice of his former counsel, and in ignorance of his right to elect to take the principal of the fund, he permitted the decree to be entered in its original form. The Appellate Division in its decision recognized the general rule that the Surrogate's Court was vested with the jurisdiction, under subdivision 6 of section 20 of the Surrogate's Court Act, to vacate or modify a decree only " in respect to the things specified in the statute and for causes of like nature." (Citing *Matter of Brennan*, 251 N. Y. 39.) Power was found to exist, however, by law to reopen or modify a decree " in the interests of justice." (Citing *Matter of Henderson*, 157 N. Y. 423.) The court was

of the opinion that the facts in the case justified its exercise. Its determination was affirmed, without opinion, by the Court of Appeals (254 N. Y. 519).

In *Matter of Henderson* (33 App. Div. 545, affd. 157 N. Y. 423, *supra*), the decree in the accounting proceeding found a surcharge against the executor in a sum approximating $10,000. That direction was based upon a mistake of fact. On an application to vacate and correct the error in the decree, the Surrogate denied the application for want of power. The Appellate Division, in a vigorous opinion by Justice CULLEN, later Chief Judge of the Court of Appeals, reversed and held that the error should have been corrected. The predecessor section of the Code of Civil Procedure relating to a vacatur, then applicable, was substantially similar in terms to present section 20 of the Surrogate's Court Act. It was held that this grant of authority was based not only upon the statutory power to vacate decrees, but also upon the inherent power vested in the Surrogate's Court as a court of record to correct a mistake of fact or an arithmetical or clerical error. The Court of Appeals affirmed. It pointed out the special importance of the vesting of the power and duty to rectify an error or mistake of fact that had crept into the record or decree in a probate court. The Legislature had not even restricted the exercise of that power by any time limitation where the facts justified it.

*People ex rel. Hirschberg* v. *Orange Co. Ct.* (271 N. Y. 151, *supra*) sustained the power of a court of criminal jurisdiction to correct its records for mistakes. The opinion of the Court of Appeals, written by Chief Judge CRANE, reviewed the inherent power of a court of record, in general, to conform its records to " the conceded or apparent facts " in order to eliminate the mistake. (Citing *Matter of Henderson, supra; Bohlen* v. *Metropolitan Elev. Ry. Co., supra; Clark* v. *Scovill*, 198 N. Y. 279.)

These authorities apply to the situation before the Surrogate in the pending application. The original order denying the application for payment of the administration expenses was based upon a true mistake as to the nature of the judgment which the government had obtained against the ancillary executor of this estate. That order was simply an intermediate order made in the course of the administration of the estate. No distribution of any of the assets has since been made and the substantial rights of none of the parties have been affected. It was represented to the Surrogate, both by way of argument and in affidavit submitted by the government, that the issue of fraud was " still in the case " in the Federal courts. The

decisions of the Circuit Court of Appeals, rendered subsequent to the prior decision of the Surrogate and the affirmance by the Appellate Division, forever eliminated any doubt as to the true form of the government's action and the judgment which it had obtained as one for the recovery of money only. It carried with it no determination of a lien upon the funds of the estate here, nor a determination of a constructive trust, nor any impressment by equitable decree that such funds were traced and identified as trust or government moneys. The rendition of the Surrogate's decision and the order entered thereon were, therefore, based upon a true mistake of fact. In furtherance of justice it should be corrected. The order is therefore vacated.

It should also be noted that the claimants to administration expenses, now before the court, were not parties to the original application before the Surrogate. That application brought in only the ancillary executor and the government. In no event, therefore, could the order be deemed to be conclusive or *res judicata* as against the present claimants. Their right to their day in court and an independent determination of their respective claims cannot be denied to them.

It is the further contention of the government that although concededly the form of its judgment against the estate was for the recovery of money only, the Surrogate's Court, under its equitable powers, may treat the assertion of the claim here as equivalent to a new action in equity and that, since under this claim the original judgment was based upon a mistake of law, a constructive trust resulted. The government also asserts that the funds paid over, which found their way into the hands of the ancillary executor, may now be traced, identified and decreed to be its property without subjection to the payment of administration expenses. These contentions are likewise overruled.

The judgment of the Federal courts, here involved, affords no basis for a claim on the part of the government to the ownership of the specific property. It was within its power to have sued in equity to procure the restoration of the funds paid over by it to the decedent upon the theory that they were diverted trust funds or moneys of the government paid under mistake, or to declare a lien upon the entire fund. Equity would have afforded them ample relief if a demonstration of the facts justified a finding of the tracing and identification of the moneys. (3 Scott on Trusts, § 465; Restatement, Law of Restitution, § 163.) It demanded no such forms of relief.

It was content with a claim for money only, and the judgment was rendered pursuant to that claim.

The present position of the government as to the nature of the judgment is controverted by its course of conduct in the original action. In its demand for relief in the complaint it asked that the court " decree that the estate of Johann Friedrich Hackfeld is indebted to your claimants in the amount aforesaid and that the defendant in his representative capacity, is personally liable to your claimants unless he pays to them the assets now in his possession as such ancillary executor, *less such administrative expenses as are allowed by the Surrogate's Court, New York County.*" (Italics mine.)

The government thus recognized, contradictory of its present position, that reasonable administration expenses should be paid from the funds of the estate. It is significant also on this point that Judge Swan, in his second decision on the petition for rehearing, stated: " Finally, we are asked to provide that administration expenses, executor's commissions and counsel fees shall have priority over the judgment. These are matters to be determined by the surrogate's court, to which the plaintiffs will have to apply in enforcing the judgment. We cannot exercise appellate jurisdiction over its determination."

What the government is attempting to do here is to ask the Surrogate's Court to amend and amplify the judgment of the Federal courts by an extension of the grounds of relief not contained within such judgment. Under well-established principles it is barred from obtaining further relief either in a proceeding in the Surrogate's Court or by an action in equity subsequent to the judgment in any other forum. Any alternative rights asserted or possessed in the original action were merged in the judgment. It cannot now obtain other forms of relief on different grounds. As Mr. Justice Holmes has observed: " The best that can be said, * * * to distinguish the two suits, is that now the United States puts forward a new ground for its prayer. * * * But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim * * * and, *a fortiori,* he cannot divide the grounds of recovery." (*United States* v. *California & Oregon Land Co.,* 192 U. S. 355, 358.)

Where the plaintiff has two or more alternative remedies for the same wrong, if he obtains a judgment with a limited form of relief, he is precluded by the doctrine of merger from

maintaining a second action. (Restatement, Law of Judgments, § 64; Scott, " Collateral Estoppel By Judgment," 56 Harvard Law Review, p. 1; 2 Freeman on Judgments [5th ed.], § 644.)

In our own State the Court of Appeals had laid down the same rules. (*Hahl* v. *Sugo,* 169 N. Y. 109; *Hellstern* v. *Hellstern,* 279 N. Y. 327; *Carroll* v. *Bullock,* 207 N. Y. 567; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304; *Sielcken-Schwarz* v. *American Factors, Ltd.,* 265 N. Y. 239.) A person cannot " maintain another suit to recover the same fund." One cannot have " two judgments against the same defendants to indemnify against the same loss." (*Hellstern* v. *Hellstern, supra.*)

The rule as to the original cause of action being merged in the judgment was stated in different form, although in similar substance, in *Gray* v. *Richmond Bicycle Co.* (167 N. Y. 348): " A cause of action is merged in a judgment rendered upon it, not only for the reason that a judgment is of a higher nature, but because it would be vexatious to the one party and of no benefit to the other to permit the recovery of two judgments against the same person for one debt."

As Judge SWAN stated in his second decision on the appeal from the judgment obtained by the government and sought to be enforced here: " There must come an end to litigation." That end has arrived.

The authorities relied upon by the government in support of its position have no application here. The general rules are stated in them, but they apply to the forms of relief which may be obtained for restitution of moneys, whether trust or government or otherwise, against the defendant in the original action. They have no relevancy here, where different relief is attempted to be obtained in a proceeding subsequent to the original judgment.

For all the foregoing reasons the moneys now in the estate are properly subject to the payment of reasonable administration expenses.

The ancillary executor has set forth in Schedule C-1 of his account the amounts sought to be disbursed by him. In accordance with the stipulation of the attorneys, the government will be given permission to file objections to such items within ten days after the entry of the order here. Thereafter, a hearing will be set in the pending accounting proceeding for the purpose of taking testimony as to their reasonableness.

In holding that reasonable and proper administration expenses may be paid from the funds now in the hands of

the accounting fiduciary, the Surrogate intends no indication that any particular claim listed in the account as an unpaid administration expense is either a proper expense or is reasonable in amount. Whether any claim is to be paid in full, in a reduced amount, or is to be disallowed in its entirety are matters that must be decided after the formal hearing in this proceeding.

Submit order on notice accordingly.