In the Matter of the Appraisal under the Transfer Tax Acts of the Trust Estate Held for the Life of JOHN O'BERRY, with Remainder and Surviving Life Estate under the Last Will and Testament of LOFTIS WOOD, Deceased.

NATHAN L. MILLER, as Comptroller of the State of New York, Appellant; MARY J. HOWEY, Respondent.

*Tax on an estate in remainder — when paid by an executor under an unconstitutional law, the amount, with six per cent interest, may be recovered by the remainderman from the Comptroller — the mistake is one of fact — such payment is not voluntary.*

Where the executor of a will pays the transfer tax imposed upon an estate in remainder passing under the will, taking advantage of the five per cent discount allowed for making prompt payment, and the statute under which the transfer tax is imposed is subsequently declared unconstitutional, the mistake of the executor in making the payment is not one of law, but a mistake as to the fact of the existence of the statute.

Such a payment is not a voluntary payment, either on the part of the executor or of the remainderman, and the remainderman is entitled to recover the amount of the tax paid, together with interest at six per cent, calculated from the time that the payment was made.

APPEAL by Nathan L. Miller, as Comptroller of the State of New York, from so much of an order of the Surrogate's Court of the county of Kings, entered in said Surrogate's Court on the 21st day of October, 1903, as directs the payment by the State Comptroller

of interest upon the amount of a transfer tax which he is by said order directed to refund to the respondent.

*Leonard B. Smith,* for the appellant.

*Robert'H. Wilson,* for the respondent.

WOODWARD, J.:

Loftis Wood died on the 16th day of April, 1884, leaving a last will and testament, which was admitted to probate by the Surrogate's Court of Kings county on May 6, 1884. By the terms of this will certain property was directed to be held in trust for John O'Berry during his life, and upon his death to be divided among certain remaindermen, among whom was Mary J. Howey, the petitioner in this proceeding. John O'Berry died on the 18th day of August, 1901. Thereafter a proceeding was instituted by the executor of the said Loftis Wood for the appraisement of said remainder interests for taxation, resulting, on December 4, 1901, in an order of the Surrogate's Court taxing the transfer to Mary J. Howey at $1,172.88. By the provisions of section 223 of chapter 908 of the Laws of 1896, if a tax levied under the provisions of article 10 of that act, or its amendments, is paid within a period of six months from the accruing thereof, it is subject to a discount of five per cent, and by the succeeding section (as amd. by Laws of 1901, chap. 173) it is provided that the executor "having in charge or in trust any legacy or property for distribution subject to such tax shall deduct the tax therefrom," and it is further therein provided that "he shall not deliver, or be compelled to deliver, any specific legacy or property subject to tax under this article to any person until he shall have collected the tax thereon," and he is required to pay the same over to the proper officials. Acting under these provisions of law, the executor of the estate of the said Loftis Wood paid over the amount of this tax to the State Comptroller, less the five per cent discount, and the remainder, we may assume, was delivered to the petitioner in this proceeding.

Section 230 of chapter 908 of the Laws of 1896, as finally amended by chapter 493 of the Laws of 1901, provides: "All estates upon remainder or reversion, which vested prior to May first, eighteen hundred and ninety-two, but which will not come into actual possession or enjoyment of the person or corporation beneficially inter-

ested therein until after the passage of this act shall be appraised and taxed as soon as the person or corporation beneficially interested therein shall be entitled to the actual possession or enjoyment thereof." The petitioner's interest in the estate of the late Loftis Wood came within the language of this clause, and the payment of the transfer tax was made, not by her agent, or by her consent, but by the executor of the will of Loftis Wood, acting under the provisions of sections 223 and 224 of chapter 908 of the Laws of 1896 (as amd., *supra*), bearing no other relation to the petitioner than that of a trustee. Subsequently, in *Matter of Pell* (171 N. Y. 48) the Court of Appeals held the amendatory act of 1899 * (differing only in the matter of dates from the amendment of 1901) unconstitutional, in that it interfered with vested rights without due process of law. An act entirely unconstitutional is a void act; it is as though no such act had ever been enacted, and under this state of facts the Comptroller of the State was in the position of taking the money which belonged absolutely to the petitioner without any foundation of law. The executor, acting under the provisions of sections 223 and 224 of chapter 908 of the Laws of 1896 (as amd., *supra*), which act is not suggested to be without full force and effect, is in the attitude of having turned over this fund in the discharge of a duty enjoined upon him by law, under the mistaken theory that there was a law in existence which required the tax to be paid, and the Comptroller is likewise in the position of having received this money under the same mistaken theory. This is hardly a mistake of law; there was no question about the reading of the statute, no mistake in the construction of the act, but a mistake as to the fact of the existence of the law. What purported to be a law was not in fact law, and while it may be said that persons are equally bound to know the constitutional law, there is such a presumption in favor of the constitutionality of statutes, that a trustee, acting under a constitutional act in reference to an unconstitutional provision of an amendatory act, can hardly be said to have made a voluntary payment of this tax, where he made the payment within the period which the law required to save the estate five per cent of the transfer tax, which would be equivalent to a penalty of the like sum for failing to perform within the time specified. The petitioner had no power, under

* See chapter 76.—[REP.

the law, to compel the payment of the legacy to her until the taxes had been paid, if such taxes were legal; the executor owed her no duty of payment until all legal obligations were discharged, and in receiving the amount which the executor paid over to her, after the payment of the tax, the relator could not be deemed to have made a voluntary payment of the tax.

There is no question raised in this proceeding as to the right of the petitioner to receive back the amount of the tax paid; this was assumed to have been fully determined in *Matter of Scrimgeour* (175 N. Y. 507) where the amount paid, with interest, was permitted to be recovered, but it is insisted on the part of the Comptroller that the restoration should be made without interest, or at least that interest should be allowed only from the time a demand was made. It is probably true, if the payment was made voluntarily by the petitioner, with a full knowledge of the facts, she would have no right to recover, unless by express statutory permission, and if the tax had been laid under a valid statute in an erroneous manner, a demand for a return of the money would be necessary to impose any obligation upon the Comptroller or other public official to pay interest, but in this case the money was paid to the Comptroller, not by the petitioner or her agent, but by the representative of the estate of the late Loftis Wood, who was discharging a duty imposed upon him by law to pay whatever taxes were legally imposed upon the legacy before paying it over. She had no control, unless through an equitable action to preserve the trust estate, over the conduct of the executor, and in this proceeding against the Comptroller she stands in the attitude of one who has been deprived of her property by the State, through its executive and legislative departments, without due process of law. The legislative department prescribed the duties of the executor; it directed, illegally it is true, but directed nevertheless, the levying of a transfer tax upon property which had already vested in the petitioner, and made it the duty of the executor to take this tax out of the legacy and turn it over to the Comptroller. The latter received this money without having any right in law to its possession or ownership, and we can see no reason why the petitioner in this case should be deprived of the lawful interest upon her money because the State, by its wrongful acts, has deprived her of its use. The intent of the Comptroller

is of no importance; he and the executor acted upon a mistake as to the existence of a law, and the petitioner being in nowise responsible for their mistakes, either of law or of fact, was wrongfully deprived of her money, which the laws of this State recognize as being worth six per cent per annum for its use, and the right to restoration carries with it, under these circumstances, by necessary implication, the right to the use of the money which should have been delivered to her instead of the Comptroller. (See *People* v. *Canal Commissioners,* 5 Den. 401.)

In *Ætna Ins. Co.* v. *Mayor* (7 App. Div. 145) it was held that a bank in paying an illegal tax was not the agent of the person whose funds it held, so as to impute voluntary payment of such tax to him and this case was affirmed by the Court of Appeals (153 N. Y. 331).

The question of interest does not appear to have been discussed in *Matter of Scrimgeour* (175 N. Y. 507), but it was necessarily involved in the order, and we are clearly of opinion that under the law the petitioner has a right to be placed in the same position that she would have occupied, as nearly as practicable, had the money been paid to her at the same time it was illegally handed over to the Comptroller, and this involves the value of the use of the fund which belonged to her all of the time that it remained in the possession of the Comptroller.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

All concurred.

Order of Surrogate's Court of Kings county in so far as appealed from affirmed, with ten dollars costs and disbursements.