In the Matter of the Appraisal of the Estate of ROBERT R. WIL-
LETS, Deceased, under the Acts in Relation to the Taxable
Transfers of Property.

WILLIAM C. WILSON, Acting Comptroller of the State of New
York, Appellant; HOWARD WILLETS, as Executor, etc., of
ROBERT R. WILLETS, Deceased, Respondent.

Second Department, April 19, 1907.

**Transfer tax — modification of decree and refund of tax paid — ownership
of property question of fact — decision of Supreme Court subsequent to
assessment of tax binding upon surrogate although State Comptroller
not a party — when upon modification it is not necessary to remit
proceeding for reappraisal.**

In a proceeding to modify a decree assessing and fixing a transfer tax and for a
refund of tax paid, a decision of the Supreme Court determining that an undi-
vided interest in real estate was not the property of the testator when in the
transfer tax proceeding it had been assumed to be his, is conclusive upon the
surrogate, although the State Comptroller was not a party to the action.

The question of ownership of property in a transfer tax proceeding is one of
fact, and a mistake as to ownership is a mistake of fact. A payment made under
such a mistake is recoverable. Although due to an erroneous construction of
the will of testator's father by the appraiser the error is, nevertheless, one of
fact.

When newly-discovered evidence is incontrovertible, the surrogate is not required
to remit a proceeding for a rehearing and reappraisal, but may modify the
original decree assessing the tax.

APPEAL by William C. Wilson, Acting Comptroller of the State
of New York, from an order of the Surrogate's Court of the county
of Westchester, entered in said Surrogate's Court on the 30th day
of June, 1906, modifying a prior order of said court fixing a
transfer tax.

*Frank M. Buck*, for the appellant.

*Wilson M. Powell*, for the respondent.

Order of the Surrogate's Court of Westchester county affirmed,
with costs, upon the opinion of the surrogate.

WOODWARD, JENKS, GAYNOR and RICH, JJ., concurred.

Second Department, April, 1907. [Vol. 119.

The following is the opinion of the surrogate.

SILKMAN, Surrogate:

This is a motion by the executor of Robert R. Willets, deceased, to modify an order of the surrogate of Westchester county, dated April 30, 1904, assessing and fixing a transfer tax upon the estate of said Willets, and to direct the State Comptroller to refund a portion of the transfer tax heretofore paid.

From the moving papers it appears that Robert R. Willets died on August 22, 1903, leaving a last will and testament which was duly admitted to probate by the surrogate of Westchester county; and letters testamentary thereunder were granted to this petitioner.

Upon his application an appraiser was appointed to appraise the estate for the purpose of assessing and fixing the transfer tax. The appraiser filed his report on April 29, 1904; and on the following day it was confirmed and by decree of the Surrogate's Court the transfer tax was assessed and fixed upon the estate at $4,026.60, which was paid by the executor.

In the appraiser's report, as thus confirmed, was an item of $33,000, being the appraised value of an undivided one-fifth interest in a house and lot in New York city, owned by the decedent's father (also named Robert R. Willets) at the time of his death in 1879.

By the will of the elder Willets, after certain specific trusts had been established, and it was provided that the remainder of his estate both real and personal, should be equally divided among his five children, one of whom was Robert R. Willets, the younger. The will also contained the recital: "It is my will that in all cases of the death of any of my children before distribution, leaving issue then living, such issue shall represent the parent and receive what shall remain of his, her or their portion."

The children of the elder Willets agreed that his widow should occupy the house and lot mentioned as her home and residence so long as she should live; and this agreement was carried out, the widow occupying the premises until her death on February 9, 1903.

A few months thereafter, and on August twenty-second, as already stated, Robert R. Willets, the younger, died and at that time no distribution had been made of that portion of the elder Willets' estate represented by the said house and lot.

It was assumed, however — but not litigated or decided — in appraising the estate of the younger Willets, that under the will of his father the house and lot together with the other residuary estate of the elder Willets passed to his five children, each of whom, including the younger Robert R. Willets, thereupon became possessed of an undivided one-fifth interest therein. It was further assumed that, upon the death of the younger Willets, his undivided one-fifth interest in the house and lot became a part of his estate and was subject to a transfer tax.

Nearly a year after the order fixing the transfer tax had been made, and on March 16, 1905, the house and lot was sold under a power of sale contained in the will of the elder Willets for $235,000 ; and on March twenty-seventh following an action was begun in the Supreme Court by his sole surviving executor to construe his will for the purpose of determining, among other things, whether the title to the house and lot vested in the younger Willets prior to his death so as to become a part of his estate, or whether, upon his death, prior to distribution, the title passed from the father directly to the issue of the younger Willets without vesting in the latter. To this action the State Comptroller was not a party.

It was tried before Mr. Justice KEOGH at a Special Term and, upon December 31, 1905, judgment was rendered therein by which it was determined as matter of fact that " the true intent and meaning of the will of said Robert R. Willets, the elder, concerning the proceeds of said house and premises is that in case of the death of either of his five children before the distribution of said proceeds, leaving issue then living, that in all such cases such issue shall represent the parent and receive his, her or their portion." The court also found as conclusion of law " that the true intent and meaning of the said will of Robert R. Willets, the elder, concerning said proceeds of said premises is that in the case of the respective shares of his children, the said Cornelia W. Carle, William H. Willets and Robert R. Willets, Jr., who severally died after the testator's death and before the distribution of said proceeds, is that the said respective shares shall be paid by the plaintiff directly to the respective issue of the said deceased children."

After this judgment had been rendered, and on March 7, 1906, this motion was made to modify, as already indicated, the order of

April 30, 1904, by striking therefrom the amount of transfer tax assessed and fixed upon the item of $33,000, representing the value of the undivided one-fifth interest in the house and lot, the petitioner claiming that, in accordance with the judgment of the Supreme Court, no interest in this property was at any time vested in the younger Willets, and it was, therefore, not a part of his estate, for which reason the surrogate had no jurisdiction to assess and fix a transfer tax thereon. The petitioner also prays that the State Comptroller be directed to refund the amount of transfer tax paid upon such item.

Section 225 of the Tax Law in force during the period covered by the matters now before me (Laws of 1901, chap. 173),* and under which this motion is made, provides in part that, "If after the payment of any tax in pursuance of an order fixing such tax, made by the surrogate having jurisdiction, *such order be modified or reversed within two years from and after the date of entry of the order fixing the tax*, on due notice to the Comptroller of the State, the State Comptroller shall, if such tax was paid in a county in which the office of appraiser is not salaried, by order, direct and allow the treasurer of the county to refund, or if paid in any other county, he shall himself refund to the executor, administrator, trustee, person or persons, by whom such tax has been paid, the amount of any moneys paid or deposited on account of such tax in excess of the amount of the tax fixed by the order modified or reversed."

As the order assessing and fixing the transfer tax was made April 30, 1904, and the present motion to modify it was made on March 7, 1906, returnable on the twenty-fourth of that month, the application is concededly within the two-year period specified by the statute.

Under the facts stated, which are without contradiction, I must be controlled by the decision of the learned justice at Special Term who construed the will of the elder Willets to the effect that the undivided one-fifth interest in the house and lot situated in the city of New York passed directly from the elder Willets to the children of the younger Willets, and did not at any time vest in the latter

---

* Laws of 1896, chap. 908, § 225, as amd. by Laws of 1901, chap, 173. This statute has been since amended by chapter 368 of the Laws of 1905.—[REP.

or form a part of his estate. It was, therefore, not property over which the transfer tax appraiser or the surrogate had jurisdiction in assessing the transfer tax on that estate. For that reason, if it be within the power of the surrogate to modify that order, it should be done in the interest of justice, as otherwise the legatees and devisees of the younger Willets will have been required to pay to the State of New York a tax upon the transfer of property which their testator did not own, and which did not pass to them from him.

The State Comptroller contends, however, that the surrogate has no power to modify the order of April thirtieth, as the error there contained in assessing and fixing a transfer tax upon the undivided one-fifth interest in the house and lot was not an error of fact, but one of law, which could only be corrected by an appeal from the order itself. (*Matter of Niven*, 29 Misc. Rep. 550; *Morgan* v. *Cowie*, 49 App. Div. 612.)

I am of the opinion, however, that it can hardly be said that the error was solely one of law. (*Matter of O'Berry*, 91 App. Div. 3.) It is true that the item of $33,000, representing the value of an undivided one-fifth interest in the property mentioned, was included in the estate of the younger Willets through an erroneous legal construction of the will of his father, but the error was one of fact in including in that estate property which the testator did not own. The ownership of property is a fact and a mistake in that respect is one of fact. If the ownership is established and a mistake is made as to the taxability of the transfer, then the error would be one of law. Both the transfer tax appraiser and the surrogate assumed as a fact that the testator owned this property. No question as to title was raised or litigated or was specifically passed upon. Ownership was assumed, and this fact, then assumed as the basis for fixing the tax complained of has, since the making of the order, been found to be erroneous through the judgment of the Supreme Court.

The facts here presented are in legal effect the same as those passed upon by the courts in *Matter of Silliman* (38 Misc. Rep. 226; revd., 79 App. Div. 98; affd., without opinion, 175 N. Y. 513); and that case, in my opinion, is authority for holding that I have the power to modify the order in the respect prayed for.

The learned attorney for the State Comptroller, in citing the *Silliman Case* (*supra*) upon his brief, quotes at length from the

opinion of Surrogate CHURCH (38 Misc. Rep. 226), who originally
passed upon the question there presented and denied a motion to
modify the order fixing the transfer tax.   Upon his brief it is stated
that the decision of the learned surrogate was *affirmed* both by the
Appellate Division and the Court of Appeals; but an examination
of the decision of the two courts last named shows that this state-
ment is erroneous — the same error appears in McElroy on Transfer
Tax Law, par. 465, the facts being that the decision of Surrogate
CHURCH was reversed by the Appellate Division and that the Court
of Appeals affirmed the latter court.  The opinion of the learned
surrogate is, therefore, without weight.

In the *Silliman* case the executors therein, in 1901, paid to the
Comptroller a transfer tax previously assessed and fixed upon the
estate of their testator by the Surrogate's Court, in fixing which no
deduction was made from the estate for the commissions to which
the trustees under the will were entitled, the tax on those commis-
sions amounting to $1,072.74.   Subsequent to the payment of the
transfer tax, the Court of Appeals, in an entirely different matter
(*Matter of Gihon,* 169 N. Y. 443), decided that the expenses of
administration, including the trustees' and executors' commissions,
did not pass to the legatees or next of kin and, therefore, that such
commissions should not be included in the estate for the purpose of
fixing the transfer tax.   After this decision had been rendered, the
executors of Silliman moved to modify the prior order assessing
and fixing the transfer tax by striking therefrom the amount assessed
and fixed as a transfer tax upon the commissions.   This motion was
denied by the surrogate before whom it was made, but his decision,
as already indicated, was reversed by the Appellate Division.
Mr. Justice BARTLETT, in the course of his opinion, saying: " It
would seem, therefore, that the previous assessment of the tax, so
far as it included such commissions, was without jurisdiction, and
that the Surrogate's Court possessed power to modify its prior
decree so as to exclude such commissions from consideration, as any
part of the sum upon which the tax was to be assessed.  (*Matter
of Coogan,* 27 Misc. Rep. 563; affd. by the Appellate Division,
*sub nom. People ex rel. Coogan* v. *Morgan,* 45 App. Div. 628,
and by the Court of Appeals, 162 N. Y. 613.  See, also, *Morgan*
v. *Cowie,* 49 App. Div. 612.)"

The facts presented in the *Silliman* case are analogous to those now before me, and that decision I regard as controlling. In the *Silliman* case it was assumed, when the original taxing order was made, that the commissions formed a part of the estate, and a tax was assessed and fixed upon them in accordance with this assumption. Subsequently, and in an action involving a different estate, it was adjudged otherwise, and the Court of Appeals then declared it to be not only within the power of the surrogate to modify the order, but that it was his duty to do so. In the present case it was assumed, when the original taxing order was made, that a one-fifth interest in the house and lot belonged to the younger Willets at the time of his death. A subsequent decision of the Supreme Court has determined that he had no interest in said house and lot, and therefore it now becomes my duty to modify the taxing order by striking from it the tax assessed and fixed upon this undivided one-fifth interest.

In *Matter of Coogan* (*supra*) a transfer tax was assessed and fixed upon United States bonds and other personal property of a testator. It was subsequently held by the Court of Appeals, in a different matter, that United States bonds were exempt from taxation under the Transfer Tax Law as it then stood (*Matter of Sherman*, 153 N. Y. 1; *Matter of Whiting*, 150 id. 27), and thereupon a proceeding was instituted to modify the taxing order and to compel a refunding of the tax paid. It was held at Special Term (CHESTER, J., *Matter of Coogan*, 27 Misc. Rep. 564) that "the surrogate had no jurisdiction to assess a tax on the transfer of these bonds, and the tax was not merely an erroneous one, but illegal for want of any jurisdiction to impose it." It was further decided (head note) that the surrogate had power "to modify his order and direct the tax to be refunded, as its original imposition was without jurisdiction."

To the same effect is *Matter of Lansing* (31 Misc. Rep. 148); *Matter of Scrimgeour* (175 N. Y. 507, affg. 80 App. Div. 388, affg. 39 Misc. Rep. 128), and *Matter of O'Berry* (91 App. Div. 3; affd., 179 N. Y. 285); and, although I have carefully examined all the cases cited by the learned counsel for the State Comptroller in opposition to this motion, I have failed to find therein anything which negatives the conclusion at which I have arrived.

Ordinarily, where a determination is set aside on the ground of

newly-discovered evidence, the order setting it aside should not contain an adjudication contrary to the former determination, but should provide for a new hearing upon which both parties may be heard. But this rule does not make it improper for a surrogate, when incontrovertible evidence is presented to him, as it is in this case, establishing that a transfer is not subject to the transfer tax which has been assessed and fixed upon it, to modify the order in respect to the erroneous tax, without remitting the matter to the official appraiser for retaxation. In the present case the facts relied upon by the petitioner to establish the exemption of the property in question from a transfer tax are not disputed; and, under such circumstances, it would be an idle ceremony for this court to send the matter back to the official appraiser for a reappraisal of the estate. (*Matter of Cameron*, 97 App. Div. 436.) As already stated, the error complained of was disclosed by the decision of the Supreme Court in the action for the construction of the will of the elder Willets. The State Comptroller contends that he is not bound by the decision, as he was not a party to the action. That is true. It was not necessary to make him a party to that action, and I do not hold that the decision is *res adjudicata* as to him. As it is, however, an unreversed decision of the Supreme Court upon the direct question presented to me, as to the vesting of the undivided one-fifth interest in the property mentioned, I feel that I must be controlled by it and leave it to the respondent here to correct any error by a review of the decision of this court.

It follows, therefore, that the order assessing and fixing the transfer tax was erroneous in part, and should be modified by striking from it the tax assessed and fixed upon the transfer of the undivided one-fifth interest in the house and lot mentioned, and that the tax paid upon its transfer should be refunded, with interest.

Motion granted, with costs.