# In the Matter of the Estate of JULIA A. FORD, Deceased.

Surrogate's Court, Broome County, March 21, 1950.

*George L. Ingalls* for Edward E. Ford and another, as executors of Julia A. Ford, deceased, petitioners.

*Herbert J. Tillapaugh* for State Tax Commission.

PAGE, S. Attorneys for executors filed their petition, return and schedules herein pursuant to article 10-C of the Tax Law

on November 8, 1948. A *pro forma* order determining the tax in the sum of $33,008.06 was entered thereupon and, after allowance of discount for advanced payment, the tax was paid on the same date in the total sum of $31,357.66. Upon subsequently making a return in respect to the Federal tax, and such return having been audited, it was discovered that erroneous assumptions had been made with respect to a number of items in the State return, resulting in a substantial overpayment of the tax. The proposed adjustments of these items consist of: (a) Allowance as a deduction for previously taxed assets derived by decedent from the estate of her husband, A. Ward Ford, who predeceased her by thirty-four days; (b) Reappraisement of the valuation of certain United States bonds to conform with the Federal audit thereof; (c) Correction of the amount of accrued income upon a certain trust as of the date of decedent's death; (d) Correction of estimated amount of a refund to the estate upon decedent's 1948 income tax; (e) Correction of erroneous computation of executors' commissions, and (f) Correction of the allowance as a deduction of the ultimate amount of counsel fees in connection with the settlement of the estate.

It is conceded that the composite effect of errors in the above-stated items sought to be corrected is an overpayment of the tax in the sum of $2,823.75.

The position of the State Tax Commission is that identified with the above-specified items (all except item " c ") are erroneous valuations of property arising because of errors of law which, as such, are correctable only by appeal; that, the period of sixty days after entry of the order having expired (Tax Law, § 232), the relief sought must be denied because of the lack of jurisdiction of this court to do otherwise. It is further contended by counsel for the commission that the only ostensible authorization for the court's affirmative action would be subdivision 6 of section 20 of the Surrogate's Court Act, but that this statute is inapplicable because no fraud, newly discovered evidence, clerical error or other *sufficient* cause has been shown, or even claimed by the movants; that the only cause of errors in the original computation rested in failure to accurately ascertain the respective items which were either as ascertainable then as now, or they were subject to a reservation of later adjustment in accordance with the provision of section 249-z of the Tax Law and the method of procedure as prescribed by courts, as e.g., in *Matter of Westurn* (152 N. Y. 93, 101–103) and *Matter of Skinner* (106 App. Div. 217); that

on this basis, the first three grounds of subdivision 6 of section 20 of the Surrogate's Court Act being unavailable, the fourth, " other sufficient cause ", on the principle of *ejusdem generis* is likewise inapplicable. Authorities cited in support of this contention are *Matter of Chisholm* (177 Misc. 423, affd. 264 App. Div. 793, affd. 290 N. Y. 842) and *People ex rel. Bankers Trust Co.* v. *Graves* (270 N. Y. 316). Cases cited in support of the contention that an erroneous valuation of property in a taxing order is an error of law, correctable only by appeal, are *Matter of Barnum* (129 App. Div. 418), *Matter of Lowry* (89 App. Div. 226) and *Matter of Rice* (56 App. Div. 253).

Although these authorities cited by the commission are pertinent and rate our careful consideration, still the paramount consideration is that the State has received full payment of the tax plus the above-stated excess. At the same time this is not a case where the movants are guilty of laches. Counsel for the executors have moved with sufficient promptitude once the erroneous aspects of previous assumptions had been clarified. They are well within the two-year period mentioned in sections 225 and 249-aa of the Tax Law.

Based on these considerations, the predilection of a court, naturally, is, if it were necessary to do so, to strain somewhat at the leash of the law in order to work out a just and equitable result. This objective, if legally attainable, can mean nothing more or less than to readjust the situation so that the State shall have full payment but no more.

Would the attainment of this result be so contrary to our firmly-established law that (as contended by counsel for the commission) it cannot be legally reached? Or are there " authorities both ways " that can be brought to bear so that some of them will supply the necessary authoritative support of the above-intimated just and equitable solution of the situation? Tax questions of this kind are frequent. Of course, the circumstances under which they have arisen vary greatly. But statutory law as well as reported cases are not wanting which enunciate and effectuate provisions and principles favorable to taxpayers who failed for one reason or another to appeal in time and which were held to be applicable to and determinative of errors closely analogous to those appearing in the present instance.

The statutory reliance of the executors (Surrogate's Ct. Act, § 20, subd. 6) confers jurisdiction upon Surrogates' Courts to vacate or modify their orders and decrees upon a demonstration of one or more of the specific conditions required by this statute.

With this basic warrant of jurisdiction in the background, our attention is particularly called to sections 225 and 249-aa of the Tax Law which provide that the Tax Commission, with the approval of the Comptroller, *shall* to the extent they are excessive, refund taxes paid in instances where the order determining a tax is "modified or reversed" by the surrogate within two years after its entry, *or,* modified and reversed upon an appeal.

Although it is true that neither of the above-cited sections of the Tax Law expressly provides that there shall be a two-year limitation within which to apply for the readjustment of estate taxes paid, yet the implication of the practically identical provisions contained in them is that Surrogate's Courts have discretionary jurisdiction, either under subdivision 6 of section 20 of the Surrogate's Court Act, or otherwise, to determine such adjustments as justice may require. That the Comptroller is authorized to pay refunds is definitely provided in and by each of these sections of the Tax Law. In its relation to taxing statutes, the position of the State is analogous to that of a party by whom an ambiguous contract was drafted who later becomes involved in some disputation with other parties to the contract. It is not to be presumed that the Legislature's intent in enacting these sections was that they should be construed as merely a mockery of taxpayers. Since such construction of these statutes does not commend itself to us, although, in respect to the right to apply for an amending order, they are not all that it seems that they should be in regard to forthrightness of expression, we may well assume that their strong implication of a taxpayer's right to a seasonable adjustment of an improvidently paid tax is not to be entirely disregarded, and surely we have a right to look elsewhere for complementary authority, aside from the procedure by way of appeal, supporting the jurisdiction of surrogates to consider applications for readjustments of taxes paid, and to make such readjustments, provided they are determined to be warranted, either pursuant to subdivision 6 of section 20 of the Surrogate's Court Act, or otherwise.

Cases intimating that the above-stated view of these provisions of the Tax Law has been held by other courts include *Matter of Willets* (51 Misc. 176, affd. 119 App. Div. 119, affd. 190 N. Y. 527) and *Matter of Jagnow* (148 Misc. 657). Also, in *Matter of Brown* (172 Misc. 413) Surrogate DELEHANTY in New York County referred to both of these sections of the Tax Law and identified with them the general principle that

courts are obliged to construe taxing statutes most favorably to the taxpayer. In *Matter of Holland* (143 Misc. 851) the decision of the court in favor of the taxpayer seems to have been based entirely on section 225 of the Tax Law, in holding that correcting modifications of the original order would be allowed even though there had originally been no qualification or reservation in respect to them. In this connection, the court cited (p. 853): "*Matter of Silliman*, 79 App. Div. 98; affd. 175 N. Y. 513; *Matter of Willets*, 119 App. Div. 119; affd. 190 N. Y. 527; *Matter of Townsend*, 153 App. Div. 85; revd., 215 N. Y. 442; *Matter of Hackett*, 133 Misc. 768, 772."

(It appears that the reversal of *Matter of Townsend* [215 N. Y. 442, *supra*] was on the ground that the Surrogate had discretion to deny the modification of the tax order there in question, not that he *lacked jurisdiction* to have granted it.)

We have next to consider the contention of the State Tax Commission that all the items here in question (except item " c ") are pure questions of law and, as such, became *res judicata* upon the expiration of the time for appeal (sixty days after entry of the order as provided by Tax Law, § 232).

Each of the said items was based primarily on factual data. Implicit in each of them, not alone in the one singled out by counsel for the Tax Commission, were erroneous factual assumptions. Indeed, it is difficult to see why counsel regards this one only as being based on a mistaken assumption of fact. None of the five appears to be solely a question of law based upon facts which have been determined and adjudicated upon evidence adduced.

In *Matter of Willets* (*supra*) it was held that even an erroneous assumption involving the construction of the devolution of property under a will which was subsequently judicially construed to the contrary was not a question of law but a question of fact as to the ownership of property. Also, in *Matter of Wing* (162 Misc. 551, 553) it was stated by way of dicta that: " The rule [that courts, subject to countervailing equities, will relieve against mistakes] is not, however, limited to cases of mutual mistake of fact, but is extended to the situations in which it is solely that of the payor (*Hathaway* v. *County of Delaware*, 185 N. Y. 368, 370; *Matter of Welton*, 141 Misc. 674, 687), and even though he may have been negligent in investigation or ascertainment (*Ball* v. *Shepard*, 202 N. Y. 247, 253; *Hathaway* v. *County of Delaware*, 185 id. 368; *Kingston Bank* v. *Eltinge*, 40 id. 391, 396). This applies to tax payments

as well as to those of other varieties. (*Betz* v. *City of New York,* 119 App. Div. 91, 92, 93; affd. 193 N. Y. 625.)''

But, even if this view were not to be adopted as being supported by a sufficient weight of authority, there are precedents to the effect that the power of a court of equity is not restricted to corrections of its judgments and decrees as to mutual mistakes in relation to purely factual matters but that, in tax cases at least, the court may exercise its discretion in the interest of justice to a taxpayer in respect to corrections of points of law involved in a previous *pro forma* order. See *Matter of Townsend* (153 App. Div. 85) where the court said: '' An examination of the reported cases shows that such a modification [revising the amount of tax] has been upheld where the tax was erroneously assessed in consequence either of a mistake of law or a mistake of fact.'' Citing *Matter of Scrimgeour* (175 N. Y. 507, affg. 80 App. Div. 388, affg. 39 Misc. 128); *Matter of Silliman* (175 N. Y. 513, affg. 79 App. Div. 98, which revd. 38 Misc. 226; *Matter of Weiler* (122 N. Y. S. 608, affd. 139 App. Div. 905), and *Matter of Willets* (51 Misc. 176, affd. 119 App. Div. 119, affd. 190 N. Y. 527, *supra*).

An interesting theory has been enunciated by some courts to the effect that errors of law may be corrected by modifying a previous order, judgment or decree because the court's *jurisdiction* under the Tax Law is limited to making correct and not erroneous determinations. Upon this basis, in similar tax cases, it has been stated and held that the original determination sought to be corrected by a modifying order had been made without jurisdiction and was, therefore, *void.* For example, in *Matter of Delafield* (109 Misc. 342) an original tax order had included a widow's dower as taxable. The court held that the Surrogate had authority to correct such error because his right to act in the first instance was prescribed and limited by the provisions of the Tax Law which did not encompass any jurisdiction, discretionary or otherwise, to impose a tax on a widow's dower. He, therefore, lacked jurisdiction to make the original order insofar as it assumed to levy a tax against the widow's dower. The order in question was, *pro tanto,* void.

*Matter of Coogan* (27 Misc. 563) was a case in which tax-exempt Federal bonds had been included in the original tax schedules. Similarly, the court there stated (p. 565): '' That [Federal bonds being exempt by Federal law] being so the surrogate had *no jurisdiction* to assess a tax on the transfer of these bonds and the tax was not merely an erroneous one, but *illegal* for want of any jurisdiction to impose it. Williams v. Board of

Supervisors, 78 N. Y. 561; Matter of New York Catholic Protectory, 77 N. Y. 342; National Bank of Chemung v. City of Elmira, 53 N. Y. 49.'' (Emphasis supplied.).

The original court having evolved its determination on the above-stated basis, this case was affirmed without opinion in *People ex rel. Coogan* v. *Morgan* (45 App. Div. 628) and again affirmed in *Matter of Coogan* v. *Morgan* (162 N. Y. 613).

In *Matter of Morgan* (215 N. Y. 703) the Court of Appeals affirmed the Appellate Division (164 App. Div. 854) without opinion, stating in its memorandum: '' The Appellate Division held that none of the remainders was taxable and that the tax appraiser and the surrogate were without *jurisdiction* in this proceeding to tax property that did not pass to the children of the testatrix by virtue of her will and that, therefore, the motion should not have been denied either on the ground that the appellant confessed jurisdiction by presenting the affidavit or upon the ground of laches.'' (Emphasis supplied.) (See, also, *Matter of Scott,* N. Y. L. J., Aug. 7, 1912, p. 2041, col. 2, affd. 155 App. Div. 929, affd. 208 N. Y. 602.)

Perhaps if this idea, if a judge errs he thereby automatically transcends his jurisdiction, were pressed to its logical conclusion and applied generally, it would be going very far in the direction of the abolition of the '' law of the case '' and of the doctrine of *res judicata.* However, in the present instance, we do not need to base our determination entirely on this theory. The present main purpose in referring to these authorities is to show the extreme lengths to which courts have gone in some cases in relation to the protection of taxpayers against taxation beyond the bounds prescribed by tax laws.

The supreme question to be determined is whether, as contended by the Tax Commission, the respective items here in question were adjudicated and determined in the *pro forma* tax order in the sense that they must now be regarded and treated as *res judicata.* In this connection we are required to consider and apply authorities bearing upon the scope, operation and application of the doctrine of *res judicata.* It is primarily to be observed that it has been well established that all is not *res judicata* which might at first blush appear to be so. In this court recent occasion arose to consider and determine whether a point having a superficial appearance of having been determined in a previous decree had actually been adjudicated in the sense of having been forever set at rest as *res judicata.* See *Matter of Edwards* (196 Misc. 997) toward the end of which cogent and controlling authorities are cited and applied to the effect that

language in a judgment or decree is not to be regarded as a final determination of the title to property unless it can be fairly seen that the specific question of title was before the court for adjudication in a previous litigation wherein, in a fair and reasonable sense, the question had been at issue and all the interested parties, or their predecessors in interest, had had a " day in court " with respect to the matter in question, or that the circumstances were such as to constitute a basis for the application of the doctrine of equitable estoppel to deny the status of the matter as being *res judicata.*

In respect to the valuation of assets of the estate here in question, there were, of course, no pleadings framing issues, no controverted question, either of fact or law, submitted for consideration and determination at the time the *pro forma* tax order was entered. At that time there was no question as to the correctness or incorrectness of any of these items in the minds of the executors or of the representative of the commission or of the court. The *pro forma* tax order was granted and entered without even a semblance of a determination of any of the present questions as *issues* before the court at that time. Therefore, the inclusion of the items here in question at the figures set forth in the schedules is not *res judicata.*

*Matter of Scrimgeour* (175 N. Y. 507, affg. 80 App. Div. 388, *supra*), applying it in a similar tax case, confirms this view in regard to the true and equitable application of the doctrine of *res judicata.* There was a *Per Curiam* opinion of the court in this case complete as follows: " Both parties mistakenly supposed that the estate was, under the law, subject to a transfer tax. The proposition *was not litigated nor decided, but assumed.* We think it was within the power of the surrogate, on an application to his discretion and favor, to open the case, relieve the respondents from the consequence of their mistake and set aside the order which had been erroneously made." (Italics mine.)

The synthesis of above cited cases wherein original *pro forma* determinations of estate taxes have been adjusted is sufficiently comprehensive to include each of the six above-mentioned elements involved in the return here in question. There is no one of them but that is well within the purview of one or more of the categories of established precedents. In the interest of justice, this is surely an instance where the court's discretion should be exercised to effectuate the relief sought.

Accordingly, the motion is granted. Either by agreement or upon notice, settle order modifying the original tax order herein by correcting the six items concerning which the present motion

has been presented and determining the computation of estate tax accordingly.

Strangely enough, it appears that this court lacks jurisdiction to direct that a refund of the excessive portion of the estate tax paid be made by the Comptroller. See *Matter of Holland* (143 Misc. 851, *supra*) which states (p. 854): " The power of the surrogate extends only to the making of such modification. It is not within his jurisdiction to order the refund. Whether such refund is due under section 225 of the Tax Law, and whether the Tax Commission will be required to make the same may be determined in mandamus or other proper proceeding ", citing in this connection, *People ex rel. Metropolitan Trust Co.* v. *Travis* (191 App. Div. 129) and *Matter of Shepard* (225 App. Div. 782).

The situation presently before us brings to light a degree of necessity for attention by the Legislature to amendments of sections 225 and 249-aa of the Tax Law which should be designed to: (1) consolidate and clarify their present overlapping and ambiguous provisions; (2) authorize adjustments by direct nego-tiation between the taxpayers and the State Tax Commission; (3) expressly provide that, failing a negotiated settlement, tax-payers be permitted a period of two years within which to take appropriate procedure for the obtainment of such relief as is sought herein, and (4) provide that Surrogates' Courts, upon determining that such relief is warranted, be vested with juris-diction to direct its effectuation by the Comptroller.