equivalent to an original retainer, but only where there is a plain intent to ratify. An owner cannot be enticed into liability for commissions against his will. A mere volunteer without authority is not entitled to commissions, merely because he has inquired the price which an owner asked for his property, and then has sent a person to him who consents to take it. A broker has no better claim to recover for voluntary services, rendered without employment, and not received and acted upon by the owner as rendered in his behalf, than any other volunteer. * * * If, upon this proof, an owner is liable, and against his express refusal to employ the plaintiff, then no man is safe in stating to applicants the terms upon which he will sell. It is not true that an owner may not declare his price to whom he will without the hazard of paying commissions to those who volunteer, unasked, to send him a purchaser upon his own terms."

These words find precise application to this case. It is conceded that there was never any employment by the defendant of the broker. In the beginning he was purely a volunteer, having neither client nor customer. Liability, therefore, can only be predicated upon a ratification. But there never was any ratification, either in terms or otherwise. On the contrary, there was no promise to pay commissions, and when the parties had arrived at a partial understanding the negotiations were utterly broken off. There was not a particle of proof to show that after such event the defendant had any knowledge that the broker was acting about the matter, much less that he was actually engaged in his behalf. It may be that what the broker did brought the parties together after the negotiations were broken off, but this did not entitle him to commissions. Sibbald v. Iron Co., 83 N. Y. 378, 38 Am. Rep. 441. Two things must have appeared—First, that the defendant knew that the broker was still engaged in procuring a tenant; and, second, that the defendant ratified his acts. Both elements are wanting in this case.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event. All concur.

(74 App. Div. 458.)

### In re EARLE.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. TRANSFER TAX—APPRAISER'S REPORT—VALUATION.
   A transfer tax appraisal should give the value of the property as of the date of decedent's death.

2. SAME—AFTER-DISCOVERED PROPERTY—APPRAISER'S REPORT—SUFFICIENCY.
   A report of an appraiser in proceedings to impose a transfer tax on property belonging to a decedent's estate, discovered after the original appraisement thereof, which fails to show that it embraces all of the property belonging to such estate and subject to taxation at the date of decedent's death, and that the valuation thereof is as of the same date, is fatally defective, and should not be confirmed.

3. SURROGATE'S COURT—TRANSFER TAX PROCEEDINGS—CORRECTION OF MISTAKE
   Under Laws 1892, c. 399, § 10, authorizing the surrogate's court to determine all questions arising under the transfer tax act, and to do any act in relation thereto authorized by law to be done by such court in other matters within its jurisdiction, where in transfer tax proceedings a surrogate inadvertently confirms a fatally defective appraiser's report he may vacate the order of confirmation and recommit the report for correction.

Appeal from surrogate's court, New York county.

Transfer tax proceedings for the assessment of property of William P. Earle, deceased. From an order vacating an order confirming the appraiser's report, and recommitting such report for correction, the comptroller of the city of New York appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edward H. Fallows, for appellant.

Hamilton Odell, for respondent.

HATCH, J. The report of the appraiser in this case seems to have been defective in not stating the value of the property subject to tax on the date of the death of the testator. There are certain specific items of property set out in the report, consisting of the indebtedness of the children and descendants of the testator, evidenced by promissory notes, which are stated to be the sums due at the date of the death of the testator, and upon these sums the tax was assessed; but the report does not show that this was all of the property of the testator at the date of his death subject to a tax. This estate was appraised and paid a transfer tax of $11,877.27 some six years prior to the present appraisal. The comptroller some six years later presented a petition to the surrogate showing that other property belonging to the testator was at the date of his death omitted from the first appraisal, and thereupon an order was issued for this appraisal, the subject of this appeal.

It is evident that there are several important questions of law involved in subjecting the after-discovered property to the payment of a tax, and the persons charged therewith ought to have opportunity to present such questions. It ought also to definitely and clearly appear that all of the property remaining of this estate, subject in any contingency to the payment of a tax, is embraced within the present proceeding, that the matter may not be left to be the subject of subsequent dispute; to that end the report should be made clearly to express that it embraces all of the property which may be taxed at the date of the death of the testator. The report does not in terms so state, and therefore it ought not to have been confirmed. The learned surrogate who made the order confirming the same states that he signed it inadvertently, without noticing this defect, and upon that ground he vacated and set the same aside, to the end that all questions might be definitely and finally settled in connection with it. It is evident that if there is any doubt the order should be sustained. The statement already made is sufficient to show such doubt. The only question, therefore, which the appeal presents, is, has the surrogate power to grant the order?

We have previously held that the authority of the surrogate to make the order must be found in the act itself. In re Smith's Estate, 40 App. Div. 480, 58 N. Y. Supp. 128. By section 10, c. 399, Laws 1892, it is provided that the surrogate's court shall have jurisdiction to hear and determine all questions arising under the pro-

vision of the transfer tax act, and to do any act in relation thereto authorized by law to be done by the surrogate in other matters or proceedings coming within his jurisdiction. The exercise of authority in the present case is for the purpose of correcting an inadvertent error committed by the surrogate under a mistake of fact. Under such circumstances power exists to correct the mistake. In re Henderson, 157 N. Y. 423, 52 N. E. 183; In re Robertson, 51 App. Div. 117, 64 N. Y. Supp. 385, affirmed in 165 N. Y. 675, 59 N. E. 1129, on opinion below; Dobke v. McClaran, 41 Barb. 491. In re Crerar's Estate, 56 App. Div. 479, 67 N. Y. Supp. 795, does not hold otherwise. In that case there was no infirmity in the order. The surrogate, in entering it, had jurisdiction. There was no mistake of fact. It had stood unchallenged for upwards of six years, and the estate to which it referred had been settled and distributed. The case was correctly decided upon the facts appearing therein, but its peculiar features limit it as an authority to the case then before the court.

It follows that the order should be affirmed, with $10 costs and disbursements. All concur.

(74 App. Div. 132.)

### MORSE v. TILDEN et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. WILLS—CONSTRUCTION—RIGHTS OF LEGATEES.

Testatrix's will gave an annuity to her husband, and directed her executors to set apart and invest, as trustees, so much of her estate as would produce such annuity, and to distribute the corpus of such trust fund among testatrix's legatees or their heirs at his death. Subsequent clauses of the will provided various legacies. Held, that the legacies were subordinate and junior to the right of the husband to have a fund set apart for the payment of his annuity.

2. SAME.

The first part of testatrix's will directed the creation of a trust fund to pay an annuity to testatrix's husband from her personal property, or her real estate if necessary, and also gave certain legacies, which from their nature were to be immediately paid. The latter part of the will directed the executor to pay certain enumerated specific bequests of money whenever the funds came into their hands sufficient to pay the same, after the foregoing provisions of the will were satisfied, and directed that the remainder of testatrix's personal estate and the proceeds of her real estate should be given to certain beneficiaries, share and share alike. Held, that the legacies given in the first part of the will should be paid before the legacies or bequests given in the second part, even if it were necessary to use the proceeds of the real estate for such purpose.

Van Brunt, P. J., dissenting.

Appeal from special term.

Suit by Waldo G. Morse, as trustee under the will of Ruby Tilden Paine, against Samuel J. Tilden and others, to obtain a construction of the will. From the decree of the special term (72 N. Y. Supp. 30), defendants appeal. Modified and affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.