The surrogate, on an order to show cause, has power to set aside an order assessing a transfer tax and directing a reappraisal, where it is claimed that certain interests were taxed at a lower rate than provided by Transfer Act, Laws 1896, p. 795, c. 908, as amended by Laws 1901, p. 380, c. 173.

**2. SAME—PROPERTY SUBJECT.**

Testatrix provided in her will that, as her brother was unable to care for himself, she desired one of her sisters and her sister's husband to care for him for life, for which they were to receive $75 per month. *Held*, that such amount was taxable under the transfer act at the rate of 5 per cent., as, in the event of the death of her sister, the husband would be entitled to the whole compensation.

**3. SAME.**

Testatrix directed the distribution of the residue of her estate to her brothers and sisters, with the provision that, if one sister named should die before the final distribution of the estate, her share should go to her daughter. *Held*, that such share was assessable at the rate of 5 per cent. under Transfer Act, Laws 1896, p. 874, c. 908, § 280, as amended by Laws 1901, p. 385, c. 173.

In the matter of the estate of Elizabeth Storms Eaton. Order to show cause why the appraisal of an estate should not be set aside and an appeal from an order assessing a transfer tax. Decree rendered.

Albert E. Campbell, for Comptroller.

Carlos J. Coleman, for executor.

KILEY, S. An order was made by the surrogate of Madison county on or about January 26, 1907, assessing the transfer tax on the above estate in accordance with the report of the county treasurer. Exception is taken by the Comptroller as to the manner of assessing said tax, who claims that, through error, certain interests were improperly taxed and the rate at which said interests were taxed is lower than the rate provided by statute. The Comptroller procured an order to show cause why the appraisal should not be set aside and a reappraisal of the estate had, under authority found in subdivision 6 of section 2481 of the Code of Civil Procedure. In order to fully protect the rights of the state, the Comptroller also appealed from the order of the surrogate assessing the tax. The appeal and the order to show cause were both argued at the same time, and, by consent, are to be disposed of by whatever decision is here made.

That the surrogate has authority to set aside his order assessing the tax, on account of the error complained of, seems to be recognized by the courts. Matter of Earle, 74 App. Div. 458, 77 N. Y. Supp. 503. The order to show cause is broad enough to confer jurisdiction upon the surrogate to direct a reappraisal; and, under the objection of the respondent, it is at least doubtful whether a reappraisal could be ordered under the terms of the notice of appeal filed herein. Matter of Wormser, 51 App. Div. 441, 64 N. Y. Supp. 897; Matter of Davis, 149 N. Y. 540, 44 N. E. 185; Matter of Manning, 169 N. Y. 449, 62 N. E. 565. If the relief sought by appellant is granted, it necessitates setting aside the assessment made against the executor, as trustee, at 1 per cent., and an assessment made against different persons at 5 per cent. The appeal is dismissed, with costs to the respondent against the state of New York. As to costs, see sections 3240 and 3241 of the Code of Civil Procedure.

I entertain the motion upon the order to show cause. Mrs. Eaton left a will and a codicil to that will. The testatrix had a mute brother, George Albert Storms, who survived her. By the sixth and seventh clauses of her will she made provision for the support and maintenance of her said brother as follows:

Sixth clause:

"I give and bequeath to my sister Susan C. Storms, during the term of her natural life, from the income of my estate, one hundred dollars per month, provided and on condition that she cares for and makes a home for my mute brother George Albert Storms during his lifetime."

Seventh clause:

"Should my sister Susan C. Storms die before my brother George Albert Storms, then and in that case I hereby direct and empower my said executor to pay to my sister Leah Catherine Kersey, from the income of my estate the sum of fifty dollars per month for caring for and making a home for my said brother George Albert Storms during his lifetime, and in case said George

Albert Storms should survive both Susan C. Storms and Leah Catherine Kersey, then my said executor is hereby authorized and directed to make other suitable and sufficient arrangements for such care and home and to pay for the same."

In the codicil of her said will, probated with the will, she provided for the support of her said brother, George Albert Storms, as follows:

"Whereas my brother George A. Storms is unable to care for himself through physical defects and infirmities, it is my wish that my sister Genevieve S. Jacobs and her husband Nathaniel P. Jacobs, do so care for him and make his home with them during the term of his natural life and that they shall receive the sum of seventy-five dollars ($75.00) per month compensation during that time. In event of his death before that of Genevieve S. Jacobs or Susan C. Higgins, I direct that they share alike with the other heirs, in the general and final distribution of my estate."

I think it must be held that the testatrix, by the codicil to her will, revoked the designation of the persons whom she desired to care for her brother as set forth in paragraphs 6 and 7 of the will, other than her executor, and by the codicil made a new designation, with different compensation attached. These designations are specific. The provision that the executor care for the brother is general and effectual only when the others fail of their purpose. A reading of the will and codicil show that one of her main purposes was the care of her brother, George A. Storms. By the order sought to be set aside, this provision for the brother was assessed against the executor at 1 per cent. The Comptroller urges that this should have been assessed against Genevieve and Nathaniel P. Jacobs, who, under the provisions of the codicil, receive $75 a month, and that it should be assessed at 5 per cent. The respondent resists the application of such a rule upon five several grounds: First. That it is payable out of the income, and not the corpus of the estate. Second. That one-half of it goes to a sister, and therefore all of it cannot be taxed at 5 per cent. Third. That the provision is for compensation to the parties designated for services to be rendered and support and maintenance to be furnished to George Albert Storms in the future. Fourth. That at any time the Jacobs could defeat it by refusing to accept under that provision. Fifth. That it is properly assessed against the executor.

As to the first ground of objection: The codicil does not make the payment dependent upon the income; and a court would not be warranted in holding that the support and maintenance of this unfortunate brother is dependent on such a contingency, which might defeat one of the prime objects of testatrix's intention.

As to the second ground of objection: If the sister Genevieve should die, then and in that event the husband would be entitled to the whole compensation. Under the possibility of the happening of such a contingency, section 230 of the law of taxable transfers (Laws 1896, p. 874, c. 908, as amended by Laws 1901, p. 385, c. 173) provides as follows:

"When property is transferred in trust or otherwise, and the rights, interest or estates of the transferees are dependent upon contingencies, or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be pos-

sible under the provisions of this article, and such tax so imposed shall be due and payable forthwith by the executors or trustees out of the property transferred."

If taxable at all against the Jacobs, it must be at 5 per cent.

As to the third ground of objection: It was not claimed upon the argument that the Jacobs had not accepted the benefit of the provision made for them in the codicil; on the contrary, the whole argument under this head was based upon the assumption that they had accepted and were acting under it. The statute refers to all property transferred by will, not the kind, nor what it is for; but the passing of the title by the will. In the present case, how was this $75 a month transferred? Only by will—no other method. The will alone fixes the amount and time of payment. The courts have already effectually held that this kind of transfers is taxable. Matter of Gould, 156 N. Y. 423, 51 N. E. 287; Matter of Rogers, 71 App. Div. 461, 75 N. Y. Supp. 835; Matter of Huber, 86 App. Div. 458, 83 N. Y. Supp. 769; Matter of McAvoy, 112 App. Div. 377, 98 N. Y. Supp. 437.

As to the fourth objection: It is provided in section 230 of the law of taxable transfers that:

"Where an estate for life or for years can be divested by the act or omission of the legatee or devisee, it shall be taxed as if there were no possibility of such divesting."

As to the fifth ground: If this fund is taxable against the Jacobs, it is not taxable against the executor; and, if wrongly taxed against him, that cannot be a ground for not correcting that error. The $75 a month, given to and accepted by Genevieve and Nathaniel P. Jacobs, should have been assessed against them and at the rate of 5 per cent. By the eleventh clause of testatrix's will she distributes the residue of her estate to her brother and sisters, except that she provides that, if her sister, Leach Catherine Kersey, shall die before the final distribution of said estate, then and in that event her share shall go to the daughter of said Leah Catherine Kersey, viz., Margaret E. Kersey. Under the portion of section 230 of the taxable transfer law (Laws 1896, p. 874, c. 908, as amended by Laws 1901, p. 385, c. 173), first cited herein, this legacy should have been assessed to Margaret E. Kersey, and at the rate of 5 per cent.

An order may be entered setting aside the appraisal and order assessing the tax, already had and made therein, and directing the county treasurer to make a new appraisal in said estate, as indicated herein, with $10 costs, besides disbursements to the attorney for the Comptroller, to be paid out of the estate. Decree accordingly.