### CALLIGAN et al. v. HASKELL.

(Supreme Court, Appellate Division, Second Department.   March 17, 1911.)

1. WILLS (§ 50*)—"TESTAMENTARY CAPACITY."

A man may be peculiar and even insane upon some special topic, and yet have testamentary capacity; the question not being whether he says or does absurd things at certain times, but whether, at the particular time of executing his will, he knows what his duties and obligations are and what he desires to do in respect of them.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 96–100; Dec. Dig. § 50.*

For other definitions, see Words and Phrases, vol. 8, pp. 6929–6931.]

2. WILLS (§ 55*)—TESTAMENTARY CAPACITY—EVIDENCE.

Evidence *held* not to show lack of testamentary capacity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–161; Dec. Dig. § 55.*]

Appeal from Trial Term, Orange County.

Action by Edward Calligan and another against Elizabeth Haskell, individually and as executrix of Edward Lambert. From a judgment for plaintiffs and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

A. H. F. Seeger, for appellant.

Charles M. Parsons (Graham Witschief and Rufus Melvin Overlander, on the brief), for respondents.

WOODWARD, J.   Although it was conceded upon the trial that the last will and testament of Edward Lambert, deceased, was properly drawn and executed, it was contended by the plaintiffs that the instrument was not the last will and testament, because it was not the free and voluntary act of the deceased. The will, after a contest before the surrogate, had been admitted to probate, and the action was brought under the provisions of section 2653a of the Code of Civil Procedure, resulting in a verdict in favor of the plaintiffs. The defendant appeals from the judgment, and from an order denying a motion for a new trial.

The case is absolutely devoid of any evidence of undue influence on the part of the defendant, or of any one who might be thought to be working in her interest. The defendant is the only surviving daughter of the testator, and the plaintiffs are grandchildren. The testator was a man 82 years of age at the time of his death. He lived alone in the village of Walden, Orange county, after the death

---

.of his wife. In April, 1908, he was found in his home seriously ill; he had fallen from a chair and had lain upon the floor, unable to help himself, for several hours when discovered by neighbors. A nurse was called, who remained with him night and day for several weeks. The defendant came to him, as was natural enough for an only daughter, and remained near him until he was well enough to be removed to her home in Elizabeth, N. J., whither he was taken on the 30th of. May following his illness. While at the critical point of his illness, in April, the deceased asked to have a lawyer come and draw his will. This was done, and the will was prepared; but it appears to be conceded that he was not at that time physically able to make a will. Subsequently, and on the 9th day of May, he asked for a lawyer to draw another will, and this will was duly made and executed; the lawyer taking notes in pencil of the testator's desires and then going to his office to draw the same, having in the meantime arranged to. have the attending physician present as a witness. There is no suggestion that the testator had any assistance in telling what he desired to have in the will; that there was any influence of any kind exerted upon him at the time, all of the arrangements having been made in the presence of the nurse. There is no evidence that the defendant or any one in her behalf ever made any improper suggestions to the testator, or that he was in any fear, or that he had any reason to anticipate any ill results from the doing or failing to do of anything in connection with his will.

On the question of the testator's mental capacity to make a will, the evidence is not more convincing. The most that can be said of it is that he was an old man, inclined to be penurious, and to do many of those peculiar things which are often noticeable in men of his age who have lived small and uneventful lives. There was not a particle of evidence which could be said to fairly support the proposition that on the 9th day of May, 1908, he was incapable of knowing and appreciating all that he did; that he was not at that time fully capable of knowing the extent of his property, the claims upon his natural bounty, and all of the particulars of the business then in hand. It is true that some of the witnesses testify to peculiarities on the part of the testator, some of them going back for years before the execution of the will, and some of these witnesses testify that the testator's conversations seemed to them irrational, but the facts which they give, and on which their conclusions are based, so far as appears, do not tend to show incapacity to dispose of his property intelligently. A man may be peculiar; he may even be insane upon some special topic, and yet have capacity to dispose of his property; the question is not whether a man says or does absurd things at times, but whether at the particular time of executing his will he knows what his duties and obligations are, and what he desires to do in respect to them, and to overcome the presumption which a proper execution of a last will and testament raises it is necessary to show more than that the testator has made an exclamation which the witness does not understand, or that he has told "fairy tales" of his early experiences at sea, or that he has taken seriously the stories which have been told to him by those who have found amusement in his credulity, or that he has,

in moments of idleness, visited the local stove dealer on many days and looked into the merits or demerits of the stoves which were on display. None of these things, common enough in old men, go to the merits of the issue tendered in such a case; none of them have any tendency to show that a man who has dictated an intelligent disposition of his property to a lawyer whom he has summoned for the purpose was incapable of doing what he actually did.

Having been submitted to the jury, and that body having found a verdict so entirely against the weight of evidence, the court should have granted the defendant's motion to set aside the verdict and ordered a new trial.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.