Matter of the Estate of ELIZA F. W. CLAPP, Deceased.

(Surrogate's Court, New York County, November, 1916.)

Wills — provisions of — testamentary capacity — appearance by special guardian in probate proceedings — jurisdiction of Surrogate's Court — Code Civ. Pro. § 2490.

A legatee who appears in probate proceedings by a special guardian, duly appointed by the surrogate, is bound by the decree admitting the will to probate to the same extent and in the same manner as the other parties to the proceedings.

Under section 2490 of the Code of Civil Procedure the jurisdiction of the surrogate to vacate a decree of probate is limited to those cases where the moving papers show fraud in the probate proceedings, or the existence of such newly-discovered evidence as would probably change the result if a new trial were granted; it must appear, however, that such evidence has been discovered since the trial and could not by the exercise of due diligence have been discovered before, that it is material to the issues and not merely cumulative or impeaching or contradicting former evidence.

Where, notwithstanding the advanced age of a testatrix and her eccentricities and peculiarities, she by her will provided for those who were the natural objects of her bounty and comprehended the scope and bearing of the provisions of her will, she will be deemed to have had testamentary capacity.

APPLICATION by a general guardian of an infant legatee for an order vacating a decree admitting a will

Misc.]     Surrogate's Court, New York County, November, 1916.

to probate, and for a trial of the issues raised by the petition.

Sternberg, Jacobson & Pollock (H. Louis Jacobson, of counsel), for executors.

George F. Orr, for petitioner.

FOWLER, S.    This is an application by the general guardian of an infant legatee for an order vacating a decree entered in this court on November 11, 1915, which admitted to probate the will of the testatrix, and for a trial of the issues raised by the allegations of the petition in relation to the execution of the will and the testamentary capacity of the testatrix.

The testatrix made her will on November 10, 1914, and on August 17, 1915, she executed a codicil to it. She died on October 22, 1915.    At the time of her death she was seventy-six years of age.    She was survived by her daughter, Florence M., and her sons, Russell and George.    A daughter predeceased her, and Leonore Charlotte Edelsten, the petitioner herein, is the sole surviving issue of that daughter.    The petitioner was seventeen years of age at the time the will of the testatrix was admitted to probate.    A special guardian was appointed for her in this court in the proceeding brought to probate the will of the testatrix, and he filed an affidavit in which he alleged that he had found no objections to the probate of the will. The petitioner now alleges that the will and codicil were not properly executed; that the testatrix lacked testamentary capacity at the time she executed them, and that their provisions disposing of the property of the testatrix were the result of undue influence exercised on the testatrix by her son, Russell Clapp.    It is further alleged that the facts in relation to these alle-

37

Surrogate's Court, New York County, November, 1916.   [Vol. 97.

gations have been discovered by the petitioner since
the probate of the will of the testatrix.

The petitioner, having appeared in the probate pro-
ceeding by a special guardian duly appointed for her
by this court, is bound by the decree admitting the will
of the testatrix to probate to the same extent and in
the same manner as the other persons who were made
parties to the probate proceeding.   The jurisdiction
of the surrogate to vacate a decree admitting a will
to probate is limited to those cases where the moving
papers show fraud in the probate proceeding or the
existence of such newly-discovered evidence as would
probably change the result if a new trial were granted.
Code Civ. Pro. § 2490; *Matter of Henderson,* 157 N. Y.
423.   It must appear, however, that such evidence has
been discovered since the trial and could not have been
discovered before the trial by the exercise of due dili-
gence; that it is material to the issues, and that it is
not merely cumulative or impeaching or contradicting
former evidence.   *People* v. *Priori,* 164 N. Y. 472.
It is, therefore, necessary to determine whether
the allegations contained in the petition meet these
requirements.

The petitioner lived at the home of the executrix,
except while she attended a boarding school, and she
always spent her vacations with her grandmother.
She, therefore, had an opportunity of knowing the
mental condition of the testatrix at the time the will
was executed, and if she was not satisfied with its pro-
visions she could have informed her special guardian
of the mental and physical condition of the testatrix
and of the other facts and circumstances upon which
she now relies to show that undue influence was exer-
cised upon the testatrix at the time she made her will.
It does not appear, however, that the special guardian
who appeared for the petitioner in the probate pro-

ceeding had any information that the testatrix lacked testamentary capacity or that any undue influence was exercised upon her by her son, Russell Clapp. The father of the petitioner, who is her general guardian, makes this application in her behalf, and submits an affidavit in which he alleges that he saw the testatrix at frequent intervals for many years before her death; that he visited at her house frequently and had ample opportunity for observing her. Therefore all the facts alleged in this affidavit as tending to show that the testatrix lacked testamentary capacity were known to him at the time the will was probated.

The allegations contained in the affidavit of Florence M. Clapp, who is now acting as executrix of the will of the testatrix and is the principal residuary legatee, in regard to the testatrix's lack of testamentary capacity, must have been known to the petitioner at the time the will was probated, because the petitioner is the favorite niece of Florence M. Clapp and has lived with her since the death of the testatrix. The facts alleged in the affidavits of Gertrude Jean Mack, Jane Eliza Archer, Margaret E. Cummings, W. Nelson Edelsten, Dr. William Stevens, Millicent L. Dow and Walter M. Adams could have been discovered by the petitioner with due diligence, as the affiants were all persons who had attended the testatrix professionally or were intimate acquaintances of hers. It appears, therefore, that the mental condition of the testatrix at the time she executed her will was known to the petitioner and her general guardian at that time, and that the evidence of the physicians who attended her and the other persons whose affidavits are submitted on this application could, with due diligence, have been obtained in the probate proceeding.

It also appears to me that, even if the allegations in the moving papers were true, the court would, never-

Surrogate's Court, New York County, November, 1916.    [Vol. 97.

theless, admit the will to probate.    The affidavit of
Florence M. Clapp, the executrix and principal residu-
ary° legatee, alleges that her mother, the testatrix
herein, had suffered from a paralytic stroke in Decem-
ber, 1914, which was subsequent to the date on which
she made her will; that her mind was greatly affected
by her physical sufferings, and that she manifested
mental weakness in various ways; that she was unrea-
sonable in her demands upon the immediate members
of her household; that she was restless and refused
to follow the directions of her physicians, and that her
conversation was broken and disconnected.    These
allegations are not sufficient to prove that the testatrix
at the time she executed her will was ignorant of the
nature and value of her property or the persons who
were the natural objects of her bounty.    The report
of the transfer tax appraiser shows that the testatrix
bequeathed to each of her sons $42,702, to her daughter,
Florence, $57,661, and to her granddaughter, Leonora
Edelsten, the petitioner, $22,880.    This would seem to
indicate that notwithstanding the testatrix's advanced
age, her eccentricities and peculiarities, she provided
for the persons who were the natural objects of her
bounty, and comprehended the scope and bearing of
the provisions of her will.    This is sufficient to con-
stitute testamentary capacity.    *Delafield* v. *Parish,* 25
N. Y. 9; *Horn* v. *Pullman,* 72 id. 269; *Cheney* v. *Price,*
90 Hun, 238; *Calligan* v. *Haskell,* 143 App. Div. 574.
The affidavits of servants and acquaintances to the
effect that the testatrix was eccentric, restless and
difficult to manage, and that she insisted upon dressing
and acting as she desired, irrespective of the wishes
of others, are not proof that she lacked testamentary
capacity at the time she executed her will.    The
affidavits of the physicians who attended her for some
years prior to her death do not contain any allegation

to the effect that the testatrix at the time she executed her will did not fully understand what she was doing or that she lacked mental capacity to know who were the objects of her bounty or what was the nature and condition of her property.

As it, therefore, appears that the alleged newly-discovered evidence referred to in the affidavits attached to the petition herein was known to the petitioner at the time the will of the testatrix was admitted to probate, or could with due diligence have been discovered prior to that time, and that even if it were submitted upon the contested probate of the will it would not warrant the court in refusing to admit the will to probate, the application is denied.

Application denied.